**David Ray BYRD, Appellant,**

**v.**

**COMMONWEALTH of Kentucky,
Appellee.**

Court of Appeals of Kentucky.

March 1, 1974.

Rehearing Denied June 7, 1974.

Anthony M. Wilhoit, Public Defender, David E. Murrell, Asst. Public Defender, Frankfort, for appellant.

Ed W. Hancock, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

A Henderson Circuit Court jury convicted David Ray Byrd of the offense of maliciously shooting and wounding with intent to kill (KRS 435.170) and of the offense of carrying concealed a deadly weapon (KRS 435.230). A sentence of twenty-one years in the penitentiary was imposed for the conviction of maliciously shooting and wounding, and a penitentiary sentence of five years was imposed for the charge of carrying concealed a deadly weapon. Byrd appeals. We affirm. This appeal is from the second trial of the case. A conviction on the first trial of the case was reversed, Byrd v. Commonwealth, Ky., 463 S.W.2d 333 (1971).

The facts of the case are not complicated. Police officers were attempting to serve a warrant on Byrd for parole violation. During the course of the affair, Byrd managed to grab one of the officers as a hostage, and threatened to shoot him. He did shoot the officer in the side; and in the melee that followed, in which gun fire was exchanged by both sides, Byrd wounded another police officer and was wounded himself.

Byrd makes the following assignment of errors. First he says the trial court overruled his motion for discovery of the FBI ballistics report in connection with the case and his motion to examine the clothing worn by the officer he held hostage and argues that both the ballistics test and the clothing worn by the officer he held hostage would furnish a basis for his defense, which seemed to be that there was some possibility that the officers might have shot each other. The officers testified that Byrd shot them, and he did not deny the testimony. The Commonwealth did not receive, nor did it introduce at the trial, any ballistics test made by the FBI or any other agency. The motion for the production of the clothing was overruled by the trial court upon the assurance of the Commonwealth's attorney that between the first trial and the second trial the clothing had been misplaced or lost. On the day of the trial, the Commonwealth attempted to introduce this clothing and advised the court that it had been found the day before. The court declined to permit the Commonwealth to introduce the clothing. We can see no prejudice to the defendant in the court's ruling. It should be noted that the defendant had an adequate opportunity at the first trial to examine the clothing, and it apparently did not afford any basis for any theory of defense on Byrd's part.

Byrd next argues that on the *voir dire* one of the jurors made a remark that Byrd was presently in the penitentiary and that this so inflamed and prejudiced the jury that it deprived him of his right to a fair trial. The trial court admonished the jury to disregard the remark made by the juror. Byrd argues that the fact that he received the maximum sentence on both charges was possibly because the jury was biased by this remark. The simple answer is that the circumstances were so aggravated that it is difficult to see how a jury would do otherwise than impose the maximum penalty on both charges.

Byrd next argues that KRS 435.-230, which denounces the carrying of a concealed deadly weapon, is unconstitutional because of the "enormous disparity between the sentence of two to five years and a fine of $50 to $500." Byrd's argument is that the application of this statute should be considered as violating the Eighth Amendment's inhibition against cruel and unusual punishment. We fail to follow his reasoning in this respect and conclude that KRS 435.230 is constitutional.

Byrd's next argument is that he was denied the right to obtain counsel of his choice at the preliminary hearing. This argument is totally without merit.

Finally Byrd argues that he was denied a right to speedy trial as guaranteed by the Sixth Amendment to the Constitution of the United States. As stated before, this court reversed Byrd's conviction after the first trial on February 12, 1971, mandate being issued on March 14, 1971. Byrd says that he moved the trial court for dismissal or in the alternative for a speedy trial on June 14, 1971. According to the record, this motion was received in the office of the circuit court clerk on August 1, 1972. On February 10, 1972, and April 24, 1972, Byrd wrote to the clerk of the Henderson Circuit Court inquiring about the status of his June motion. On May 11, 1972, he was informed by letter from the circuit court clerk that the judge had not set the case for trial. On July 13, 1972, Byrd filed motion to dismiss the charges on the ground that the Commonwealth had failed to prosecute him within a reasonable time. The trial court overruled the motion and set the case for trial on September 25, 1972. Byrd moved for a continuance, and the case was reset for trial on November 16, 1972. The trial court set the motion to dismiss for hearing on November 13, and after the hearing overruled Byrd's motion to dismiss on the ground that he had not received a speedy trial. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, at page 2192, 33 L.Ed.2d 101 (1972), states:

> "A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

The trial court found that Byrd did not move for a speedy trial until July 1972. The June 1971 motion referred to by Byrd was filed in the clerk's office in August 1972. It is significant that the many letters and motions filed by Byrd contained a certificate that they were handed to the mail clerk or case worker at the prison, with the exception of the June 1971 motion. The trial court further noted that Byrd's defense counsel at the first trial had been appointed Commonwealth's attorney in 1971, and further that the county jail had been declared inadequate for high-risk prisoners by the Federal authorities until certain remedial measures were taken.

Byrd argues that he was prejudiced by the delay because of the inability to secure the attendance of defense witnesses who, according to Byrd, would testify that

he had been drinking before the incident. One of the witnesses testified for the Commonwealth, and it is apparent from the record that Byrd's argument of prejudice is without merit. The evidence of guilt was clear, convincing, and without substantial contradiction. We conclude that the length of delay prior to the second trial did not deny Byrd a speedy trial within the meaning of the Constitution.

Judgment affirmed.

OSBORNE, C. J., and JONES, MILLIKEN, REED, PALMORE, STEINFELD, and STEPHENSON, JJ., sitting.

All concur.