**Cholly B. JOHNSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 31, 1974.

As Modified Sept. 13, 1974.

Geoffrey P. Morris, Public Defender, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Thomas A. Ainley, Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Justice.

The defendant in this case was convicted of two counts of armed robbery and sentenced to ten years on each count, the sentences to run consecutively. In the indictment the Commonwealth charged that the defendant, Cholly B. Johnson, and three others held up an Enco Service Station at 35th Street and Broadway, Louisville, on May 18, 1972 at approximately 1:00 PM.

Earl Wheeler, the manager of the service station, testified that he was sitting in his office at approximately 1:00 PM on the day of the robbery when a gun was placed to the back of his head. Then a fellow employee, Raymond Miller, was pushed into the office and hit over the head with a pistol. As the two robbers were leaving the office, one of them said "shoot the honkie" and Wheeler was then shot in the back at point-blank range. After being wounded, Wheeler turned around in his chair, shutting the office door which locked automatically. Six or eight shots were then fired into the door after the robbers discovered they had left behind a sack of money—part of the fruits of the robbery—inside Wheeler's office. Prior to the shooting, Wheeler had not seen either robber in his office. Upon turning around however, Wheeler was able to see the defendant, Johnson, and the other man who did the shooting.

Raymond Miller, the service station employee who was pushed into Wheeler's office, saw neither robber in the office, but did identify the defendant by his voice at a lineup conducted at police headquarters after the robbery. Wheeler, who was taken to the hospital after being shot, did not see the lineup, but saw the defendant in court in September 1972 and later in De-

cember of the same year and made a positive identification at the trial. Apparently the four suspected men, who were later arrested, left the station in a 1967 Cadillac which was later seen parked outside of Apartment 1, 452 Thirty-eighth Street where the arrest was made.

Officer Joel Maupin testified he was summoned by radio to the service station where he observed the 1967 Cadillac with four black men including the driver he identified as Nathaniel Hadder, who was subsequently identified as one of the four men arrested. Officer Maupin later observed the car outside of the apartment where the arrest took place. Several other officers were summoned to the apartment the suspects were seen entering. Officer Stewart Kerr testified he looked through a window into the apartment the four suspects had entered and observed four small pistols on a couch. Officer Kerr and several others entered the apartment through the window and found the four men in a bedroom. The defendant, Johnson, was found sitting in a chair in the corner. Seized along with the four suspects was a pistol identified by Miller as one taken from him during the robbery, a wallet with an Enco credit card, a driver's license and Bankamericard taken from another employee of the service station, Jerry McElhaney, and $391 further fruits of the robbery.

At the trial, Johnson took the stand in his own behalf. He stated he had visited some friends, but that he arrived later at James Jackson's apartment where he was playing with Jackson's baby at approximately 12:30 or 1:00 PM on the day of the robbery or possibly a little later that day when he heard a commotion in the hall. He said three men, Charles Williams, Donald Mattingly and Bernard Hadder burst into the Jackson apartment. Then someone said, "Here come the police." Jackson made everyone leave his apartment. Johnson and the others then went to Bernard Hadder's apartment. A short while later the police arrested the defendant who was

at the time in the bedroom with his shirt off. On the witness stand, Johnson said some friends could state he was with them earlier in the day of the robbery, but that after ten months in jail, he could not locate them. He did admit he made no attempt to subpoena them nor did he tell his lawyer he had seen several of his friends in court the day prior to his testimony.

Johnson's appeal is based on the following issues:

I.  Whether the appellant was denied due process of law when the Commonwealth failed to bring the appellant promptly to trial?

II.  Whether the trial court committed prejudicial error in failing to allow the testimony of Police Officer Allen Sohl as to the possible misidentification of the appellant?

III.  Whether the voice identification by one of the victims should have been suppressed and whether or not the in-court identification by another victim was tainted by prior identification at pre-trial confrontations so as to deny appellant due process of law?

IV.  Whether the trial court committed prejudicial error in failing to allow trial counsel to use a newspaper account of the armed robbery to impeach the victim's testimony?

V.  Whether the appellant was denied effective assistance of counsel and a fair trial by the Commonwealth's failure to reply in whole to a bill of particulars propounded by the appellant?

During the course of the trial the defense attempted to introduce the testimony of Police Officer Allen Sohl. Officer Sohl had used the defendant, who at the time was incarcerated in the county jail, as a 'filler' in six police lineups. Twice during those lineups Johnson, according to Sohl, was identified as a participant in a

robbery which occurred when Johnson was in jail at the time of the robbery.

■■ It was part of Johnson's theory of defense that he had been mistaken for another person, Henry Williams, who Johnson claimed had committed the robbery for which Johnson was charged, as well as several other robberies while Johnson was in jail. When the defense asked Sohl if Johnson had been in lineups after being placed in jail, the Commonwealth's Attorney objected to the question and the trial court sustained that objection on the grounds that such a question was irrelevant. As explained by the defense, the testimony was to be used to support their contention of mistaken identity. An avowal was made of Sohl's testimony after the court sustained the Commonwealth's objection to its introduction. Even if we assume arguendo that the court's ruling was erroneous, we still do not consider it prejudicial because we cannot infer that Johnson's mistaken identification by another person was evidence that Miller mistakenly identified him. The weight accorded an identification is a matter for the jury. It was Raymond Miller who identified Johnson at a lineup as the person who spoke the words "shoot the honkie" after which Earl Wheeler was shot in the back; he could not identify by sight.

The voice identification of Johnson by Miller was supported by the sight identification of Johnson by Earl Wheeler who was shot during the robbery. Wheeler did not go to the lineup conducted after the arrest of Johnson because he had been taken to the hospital for treatment of his gunshot wound. In fact, Wheeler did not see the defendant until September 1972 and later, in December of that year, during the course of pre-trial meetings, but he positively identified Johnson at the trial as one of the robbers.

■ The appellant asserts he was denied due process of law by the denial of the right to a speedy trial. Under the Sixth Amendment to the United States Constitu-

tion and Section Eleven of the Bill of Rights, the Kentucky Constitution, a defendant in a criminal case is guaranteed the right to a speedy trial. That right has been recently construed in the case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Applying the criteria of Barker v. Wingo, we can clearly see that Johnson has not been deprived of his right to a speedy trial. He was indicted June 13, 1972, and his case was set for trial on July 27, 1972. The case was continued until August 30, 1972, when appellant's counsel failed to appear at the trial. The Commonwealth secured a continuance until December 13, 1972, for reasons not specified. On October 13, 1972, appellant's counsel withdrew. On November 27, 1972, new counsel moved for a bill of particulars. The record does not show what action was taken on that motion but on December 13, 1972, the case was continued until March 8, 1973, on the court's own motion. In February 1973, appellant's counsel filed another motion for a bill of particulars and the case was finally tried on March 8, 1973.

In *Barker* where a much longer delay in bringing an accused to trial was tolerated, several criteria were advanced for testing the reasonableness of the delay: length of delay, the reasons for it, the accused's assertion of his rights, and prejudice to the accused.

■ Here, during the delay, there is no record of any attempts by the appellant to secure a speedy trial. His counsel announced ready for trial when the case was called on December 13, 1972, but he voiced no objection when the case was reset for trial on March 8, 1973.

Appellant says the delay prevented him from securing witnesses, but he is unable to demonstrate any attempt to call them by subpoena or any other means. It is significant that there is no evidence in the record of any attempt to secure the presence of the so-called witnesses. In fact, the appellant's brief states that appellant

saw one of these "witnesses" the day before the trial but did not bring this to the attention of his attorney at the time. We conclude that the delay here was reasonable and was not prejudicial to the appellant.

After cross-examining Raymond Miller on the facts surrounding the robbery, the defense attempted to question Miller on the contents of a newspaper account of the robbery which appeared in the paper the day after the robbery. The Commonwealth objected to the use of the article on the grounds that it was hearsay, such objection being sustained by the court. Neither was the defense permitted to enter the article into the record by an avowal, so there is no way of knowing on appeal what the entire article stated. Apparently, the defense wished to use the article in an attempt to impeach the testimony of Miller on some part of his account of the robbery. We find no prejudicial error here in not admitting the newspaper account for the purpose of impeaching the testimony of Miller, for the record does indicate there was no direct quotation of Miller at all in the article. However, it would have been better practice to permit the article to be recorded in an avowal so that it would be available on appellate review.

Johnson asserts that he was not afforded all the information requested by questions asked in the bill of particulars granted to assist him in the preparation of his defense. If the indictment does not serve to inform the defendant sufficiently about the specific charges against him, a motion for a bill of particulars should be granted as it was here. In the case at bar the indictment states that the defendant is indicted for armed robbery and, in numbered counts, charges the defendant with armed robbery of specified individuals at a stated location on a stated date. Answering the motion for the bill of particulars, the Commonwealth's Attorney stated the approximate time of the robbery which was not on the indictment and supplied other information concerning the lineup, the Miranda warning given the defendant, the money seized, and the absence of a search warrant. Matters such as time of the arrest, the get-away car, and the dress of the defendant when arrested were evidentiary and did not serve to inform the defendant of the specifics of charges against him, and the request for information on those points was properly denied by the Commonwealth's Attorney. We conclude that Johnson got all of the information he was entitled to get in answer to the interrogation. The Commonwealth used no witnesses other than those listed on the indictment.

The judgment is affirmed.

All concur.