Robin W. WALKER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Oct. 28, 1977.

As Modified On Denial of Rehearing
Jan. 31, 1978.

---

Jack Emory Farley, Public Defender, Rodney McDaniel, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Patrick Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

Appellant was convicted of murder, first-degree burglary and taking by theft. (KRS 507.020, KRS 511.020 and KRS 514.030, respectively.) His punishment was fixed at life imprisonment on the murder charge, 20 years' imprisonment for first-degree burglary, and 5 years' imprisonment for theft by taking. The first count of the indictment charged the appellant with having murdered Clarence Perciful by shooting him with a gun or by participating in a conspiracy pursuant to which he was shot and killed by John L. Arnold or Peter L. Tribbett, or both. The foregoing sentences were to be served concurrently. The appellant now brings this appeal, alleging six separate grounds for the reversal of his conviction.

John Arnold was living in Indianapolis, Indiana. At one time he lived with the deceased, Clarence Perciful, in Mount Vernon, Kentucky. Arnold told his friend, the appellant, that he knew of a place to rob in Mount Vernon. Arnold and the appellant, joined by Pete Tribbett, left Indianapolis and drove to Mount Vernon, Kentucky, in Tribbett's truck. The three had discussed robbing the deceased after Arnold had told the appellant and Tribbett that the deceased had money and guns in his home. The appellant and the other two men made the trip from Indianapolis to Mount Vernon with the appellant driving the pickup truck and supplying the money for gasoline since the other two had no funds.

When the three men arrived in Mount Vernon, they went to the home of Perciful. Arnold got out of the car and went to the door. Perciful, apparently recognizing Arnold, let the three men into his home.

The four men talked for a period of time and Arnold, Tribbett and the appellant left temporarily for the purpose of getting something to eat. Thereafter, the three men discussed the possibility of robbing Perciful. Arnold pointed out that they could not rob him and leave him alive to tell the authorities. They discussed briefly the possibility of forgetting about the whole thing, but it occurred to them that they didn't have any money. In fact, the appellant told Arnold and Tribbett that he didn't want to go back to Indianapolis empty-handed. Thus, the three men returned to the home of the deceased with the understanding that Pete Tribbett would do the killing. Tribbett was armed with a .32-caliber pistol. The three men again entered Perciful's home and talked with him for a short while. They then went downstairs into the basement, where the deceased, a gun collector, had a shooting range, apparently to fire the .32-caliber pistol which Tribbett had. When they reached the basement, Arnold indicated to Tribbett to shoot the deceased. When he did not, Arnold took the pistol and shot the deceased in the chest twice, killing him. The three men returned to the first floor of the house, stealing a .45-caliber Satin Commander Colt pistol, several other firearms, $450 cash, an electric guitar and amplifier, an automobile radio, 24 eight-track tapes, two auto tape players, and a CB radio. The men placed the stolen merchandise in the pickup truck and returned to Indianapolis.

Several months later a police investigation traced the .45-caliber Satin Commander Colt pistol to the appellant in Indianapolis where he was under arrest for unrelated

charges. Kentucky State Police officials went to Indianapolis and while there obtained a statement given by the appellant whereby he admitted his complicity in the murder and robbery of the deceased. It might be noted here that John Arnold testified for the prosecution and that no testimony was offered on behalf of the defense.

■ The first assignment of error is that the court erred to appellant's substantial prejudice and deprived appellant of due process of law by overruling appellant's motion for a directed verdict of acquittal as to Count 1 of the indictment. The evidence for the prosecution established that the appellant not only drove appellant and Tribbett to Mount Vernon, Kentucky, but he also supplied the funding for the trip as the other two men did not have any money. Also, after having visited with the deceased for a short while, the three men left to get something to eat at a nearby restaurant and to discuss the possibility of going through with the robbery. It was at this time that Arnold pointed out to the appellant and Tribbett that they could not rob Perciful and let him live to tell the authorities. It was at this point that the appellant stated in the discussion that ensued that he didn't want to return to Indianapolis empty-handed. This court concludes that the trial court did not abuse its discretion in overruling the appellant's motion for a directed verdict on Count 1 of the indictment.

■ The appellant also urges in the alternative that even if the evidence is sufficient to overcome a motion for directed verdict of acquittal, he was still entitled to a directed verdict upon the ground that he voluntarily and completely renounced his criminal purpose in the alleged conspiracy.

KRS 502.040(2) provides an exemption from criminal liability for the conduct of another only when the renunciation is "voluntary and complete" as defined in KRS 506.060(2), and then only if (a) it deprives the defendant's prior participation of its effectiveness in the commission of the crime, *or* (b) the defendant gives timely warning to the proper law enforcement authorities or otherwise "makes proper effort to prevent commission of the offense." Quite aside from the question of whether Walker's so-called "renunciation" could reasonably be found to have been "voluntary and complete," we see no possible way in which it could be said to have eradicated the effect of his previous contribution to the commission of the crime. According to the only evidence bearing on the point, it was he who drove the truck from Indianapolis to Mount Vernon and provided the gasoline to make the trip possible, and later on he resisted a suggestion that the conspirators abandon their criminal purpose and return to Indianapolis. Had he not done these things Arnold would not have been present with a gun in his hand at the time and place of the murder. By no gymnastics of the imagination could it be maintained that his sudden loss of fortitude at the final moment of truth somehow resurrected conditions as they would have been had he never participated in the undertaking. Regrettable as it may be, it was simply too late for him to undo the effect of what had been done. With respect to the other possible method of meeting the alternative requirements of KRS 502.040(2) there was, of course, no evidence that Walker gave any warning to the authorities or made any effort whatever to prevent the commission of the offense.

■ The appellant next contends that the trial court erred to his substantial prejudice and deprived him of due process of law by ruling that his uncounseled confession was admissible since the confession was improperly obtained by promises of a more lenient sentence coupled with a fear of the death penalty. During the course of the trial an in-chambers hearing was held by the trial court upon the voluntariness of the confession that the appellant gave in Indianapolis to Detective Sam King of the Kentucky State Police. Detective King advised the appellant of his rights and further testi-

fied that the appellant said he understood his rights but agreed to waive them and talk to Detective King. Thereafter, the appellant voluntarily gave Detective King a statement, which was signed by the appellant. He further maintains that his confession was improperly induced by this promise of a more lenient sentence which was coupled with a fear of the death penalty. Detective King, however, testified at trial that he made no threats or promises of any kind whatsoever to the appellant to induce the confession. Under these circumstances the issue here is one of credibility, and absent any extenuating circumstances the decision of the trial court should not be disturbed. *Edwards v. Commonwealth,* Ky., 500 S.W.2d 783 (1973). Since there was no evidence offered on behalf of the defense, we do not have the benefit of appellant's testimony.

■ The appellant next contends that the trial court erred to his substantial prejudice by admitting into evidence his confession which was obtained in violation of *Miranda v. Arizona.* The testimony taken at the evidentiary hearing establishes that Detective King advised the appellant of his rights and the appellant told Detective King that he understood his rights. Here the trial court's ruling that the confession was voluntary was not clearly erroneous and should not be disturbed on appeal. *Allee v. Commonwealth,* Ky., 454 S.W.2d 336 (1970). When examining the issue of voluntariness the "totality of the circumstances" surrounding the taking of the confession must be considered. These factors are age, education, intelligence, linguistic ability, sanity, etc.

■ The appellant's next contention is that he was denied his constitutional right to a speedy trial by the 15-month delay between the indictment and trial. There was no attempt, however, by the appellant to secure a speedy trial. In *Byrd v. Commonwealth,* Ky., 509 S.W.2d 261 (1974), there was a 21-month interval between the reversal of the defendant's conviction and his retrial. But this court affirmed the conviction in spite of the fact that the defendant claimed prejudice. A 10-month delay was held not to have denied the defendant his right to a speedy trial in *Johnson v. Commonwealth,* Ky., 514 S.W.2d 115 (1974). Thus, we cannot say that the appellant here was denied his constitutional right to a speedy trial.

■ The appellant next contends that he was substantially prejudiced and denied his constitutional right to a fair trial by the prosecution in introducing evidence that an alleged coconspirator had pleaded guilty to the charged offense and accepted the maximum penalty of life imprisonment. Evidence was introduced that the appellant's coconspirator, John Arnold, had pleaded guilty to the murder of the deceased and had been sentenced to life imprisonment. The prosecutor commented on this fact during his closing argument. At no time did appellant's trial counsel make any objection to this evidence. It is well settled in this Commonwealth that without a timely and proper objection at trial alleged errors are not properly preserved for appellate review. *Newell v. Commonwealth,* Ky., 549 S.W.2d 89 (1977).

■ Finally, the appellant alleges that the court below erred to his substantial prejudice by admitting into evidence, over defense objection, photographs of the deceased which were inflammatory and without significant probative value. The prosecution introduced seven photographs of the deceased. These photographs showed the deceased in the condition in which he was found by his friends. The photographs that were introduced were neither inflammatory nor gory in detail, but simply depicted the scene of the crime and the condition in which the body was found. *Pilon v. Commonwealth,* Ky., 544 S.W.2d 228 (1976); *Napier v. Commonwealth,* Ky., 426 S.W.2d 121 (1968).

The judgment is affirmed.

All concur.