THE STATE OF OHIO, APPELLEE, *v.*
BRONAUGH, APPELLANT.

(No. C-830669—Decided May 16, 1984.)

*Mr. Arthur M. Ney, Jr.,* prosecuting attorney, and *Mr. Paul R. Markgraf,* for appellee.

*Mr. Jack C. Rubenstein,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County, Ohio.

The appeal in the case *sub judice* is taken from the judgment entered and sentences imposed by a judge of the court of common pleas after the defendant-appellant, Thomas Bronaugh, was tried before a jury and found guilty as he stood charged under R.C. 2925.03 of two counts of trafficking in marijuana, a Schedule I controlled substance. In the three assignments of error given to us for review, we are confronted with a series of questions concerning the justification for and scope of the warrantless search of an automobile that had been impounded by an officer of the Hamilton County Sheriff's Department following the arrest of Bronaugh. The evidence seized as a result of the search was the object of an unsuccessful motion to suppress and was ultimately to play a crucial part in the prosecution's case at trial.

I

Shortly after midnight on November 24, 1982, Deputy Thomas Anderson was on routine patrol in a suburban section of Cincinnati, Ohio, when his attention was drawn to two individuals who were then seated in an automobile that was parked in the lot adjoining a convenience store. Because he had observed the pair at exactly the same location approximately twenty minutes earlier, his suspicions concerning the reason for their presence in the lot were aroused to such an extent that he brought his patrol car to a stop at the curb in an effort to get a closer look at the vehicle and its occupants. From his vantage point at the fringe of the lot, Anderson was thereafter able to observe the person in the driver's seat as he smoked what the of-

ficer's training and experience told him was a marijuana cigarette.

Concluding that there were appropriate grounds to warrant further investigation, the deputy walked over to the vehicle, ordered both occupants to alight from the passenger compartment, and at the same time demanded identification from the suspect who had been seen holding the cigarette. In response to this set of instructions, the person in the driver's seat first produced an opertor's license bearing the name and photograph of one Eugene Lampkin, who was then the subject of an ongoing investigation concerning an incident of felonious assault. As the individual got out of the vehicle, however, the officer realized that he was not, in fact, Lampkin, but was instead Thomas Bronaugh, a person known to him by virtue of a prior arrest.

As soon as Anderson became aware of Bronaugh's true identity, he was placed under arrest, and a decision was made to impound the vehicle in which he had been seated. The officer testified in the court below that he found it necessary to secure the vehicle and to remove it from the scene because Bronaugh admitted that it did not belong to him and because his companion, who was eventually permitted to leave the lot without consequence, did not possess a valid driver's license.

After Bronaugh was taken into custody, the vehicle was subjected to a standard inventory search as part of the impounding process. Although the search actually began on the lot where Bronaugh was arrested, it was not completed until the vehicle had been transported to a district office of the sheriff's department. Nothing of any significance was discovered in the passenger compartment, but when the deputy opened the trunk, he came upon a suitcase and a brown paper bag that were found to contain a considerable quantity of marijuana and a triple-beam scale commonly used in connection with the packaging and distribution of the controlled substance. It is undisputed that the officer did not first obtain a warrant before opening the trunk, examining the two containers and seizing their contents.

II

The three assignments of error that form the basis of this appeal have as their common predicate the denial of Bronaugh's pretrial motion to suppress the contraband discovered in the course of the inventory search of the impounded automobile. In the first assignment, Bronaugh questions the deputy's authority in law to make the initial arrest, arguing that he should not have been taken into custody because the officer had probable cause to believe only that he had committed a minor misdemeanor offense by possessing the small quantity of marijuana rolled in the cigarette. In the absence of an appropriate basis for a custodial arrest, he reasons, there was no justification for impounding the vehicle in which he had been seated, or for subjecting it to any form of search.

The statute upon which Bronaugh relies to contest his arrest is R.C. 2935.26(A), which reads, in full, as follows:

"Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

"(1)  The offender requires medical care or is unable to provide for his own safety.

"(2)  The offender cannot or will not offer satisfactory evidence of his identity.

"(3)  The offender refuses to sign the citation.

"(4)  The offender has previously been issued a citation for the commis-

sion of that misdemeanor and has failed to do one of the following:

"(a) Appear at the time and place stated in the citation;

"(b) Comply with division (C) of this section."

Although it is true that where, as here, an individual is seen smoking a small quantity of marijuana in violation of R.C. 2925.11(C)(3), the issuance of a citation for the minor misdemeanor is the general rule, the statute does explicitly authorize a custodial arrest under certain exceptional circumstances. One such circumstance occurs when the suspect cannot or will not produce a satisfactory form of identification.

We find this particular exception to be apposite to the facts of the case *sub judice*, where Bronaugh produced a driver's license belonging to another individual in response to Anderson's request for identification. In our judgment, the proffer of the license and the implicit representations necessarily following from it were sufficient to permit the officer to conclude reasonably that Bronaugh either could not or would not provide him with satisfactory evidence of his identity. It is our conclusion, therefore, that the officer was, under the circumstances, afforded the appropriate justification under R.C. 2935.26(A)(2) to effectuate a custodial arrest for a minor misdemeanor offense.

Notwithstanding the foregoing analysis, we are further convinced that the circumstances, as they developed after the initial encounter, provided an independent justification for the arrest. In this regard, it is appropriate to note that Bronaugh's attempt to identify himself by using the driver's license issued to Lampkin had a twofold significance. Not only did it meet one of the exceptions to the general rule precluding arrests for minor misdemeanors, but it also can be said to have resulted in the commission of a separate offense under R.C. 4507.30(C). Pursuant to the terms of the statute, it is unlawful for a person to display or represent as one's own an operator's license that has been issued to another individual. The offense is punishable by a fine of not more than five hundred dollars and/or a term of incarceration of not more than six months, R.C. 4507.99, and is, therefore, greater in degree than a minor misdemeanor. R.C. 2929.21(D). Because it is well settled in this state that a law enforcement officer may arrest a person for a misdemeanor such as that defined in R.C. 4507.30(C) when the offense has been committed in his presence, it must be said in the instant case that Bronaugh's response to the officer's request for identification was, in its own right, a violation of law that provided an appropriate basis for his arrest apart from the significance it otherwise attained with respect to the general rule prohibiting arrests for minor misdemeanor offenses. R.C. 2935.03; *State* v. *Darrah* (1980), 64 Ohio St. 2d 22 [18 O.O.3d 193]; *State* v. *Mathews* (1976), 46 Ohio St. 2d 72 [75 O.O.2d 150]. The first assignment of error is, accordingly, without merit.

## III

In his second assignment of error, Bronaugh separately challenges the scope of the inventory search of the impounded automobile, arguing that the intrusion that led to the discovery of the contraband exceeded the limits of reasonableness imposed by what is otherwise a recognized exception to the Fourth Amendment's general warrant requirement. Specifically, he would have us hold under the circumstances of the instant case that a law enforcement officer may not, in the course of an inventory search, open and examine the contents of closed containers found in the trunk of an impounded automobile. Because such containers may be easily secured and held for safekeeping by

other, less intrusive means, he reasons, there is no valid reason consistent with established Fourth Amendment law to subject them to a warrantless search.

The starting point for our analysis[1] of this claim is the general rule providing that an inventory search of a lawfully impounded vehicle does not infringe upon the rights guaranteed by the Fourth Amendment when it is conducted in accordance with standard police procedures. *South Dakota* v. *Opperman* (1976), 428 U.S. 364; *State* v. *Robinson* (1979), 58 Ohio St. 2d 478 [12 O.O.3d 394]. Such a search is deemed to be constitutionally permissible in the absence of a warrant because it reasonably serves to advance three legitimate interests of the community: the protection of the owner's property while it is in police custody; the protection of the police against claims or disputes concerning lost or stolen property; and the protection of the police against potential hazards posed by impounded property. *South Dakota* v. *Opperman, supra,* at 369.

Although it has been said that an inventory search does not provide a general license for the police to rummage at will or to examine all the contents of a particular vehicle, *id.* at 381-384 (Powell, J., concurring), the nature and extent of any limitations governing the scope of the search have never been precisely defined. There is no question under *Opperman* and *Robin-*

son, supra, that an inventory search may properly extend to those areas of a vehicle such as the glove compartment and the trunk, but beyond this it has not been clear how far the search may go, particularly where, as here, closed containers are found within the vehicle. Some authorities have suggested that the search may be no more intrusive than is necessary to protect personal property and to guard the interests of the police, *e.g., State* v. *Robinson, supra,* at 479, while others have attempted to tailor the scope of the intrusion by examining the particular characteristics of the closed containers found within the vehicle, see, *e.g., State* v. *Russ* (Apr. 22, 1981), Hamilton App. No. C-800231, unreported[2]; *State* v. *Hibbett* (Feb. 20, 1980), Hamilton App. No. C-780728, unreported; *State* v. *Thacker* (Apr. 16, 1980), Hamilton App. No. C-790305, unreported.

To an appreciable extent, Bronaugh's argument in the case *sub judice* can be said to incorporate both lines of reasoning. In his view, the opening of the containers found in the trunk of the impounded automobile exceeded the scope of a lawful inventory search because the procedure was more intrusive than was necessary under the circumstances and because the particular characteristics of the containers created a reasonable expectation of privacy that shielded their contents from routine police inspection.

---

[1] It should be noted at this point that we have some reservations concerning Bronaugh's standing in the court below to challenge the search of the impounded vehicle under the Fourth Amendment. The record clearly reflects that the automobile did not belong to him, and there is no evidence to explain why he happened to be in it at the time of his arrest. His presence in the vehicle and his possession of the ignition key did not, in our estimation, necessarily establish standing, but we choose not to address the issue on the merits in view of the prosecution's explicit concessions in the course of oral argument of this cause on appeal that standing did, in fact, exist.

[2] In *Russ*, we noted a distinction between containers that are commonly used to hold personal and private articles and those that are used for other purposes. Concluding that a small leather case was, unlike a purse, a container not commonly known to be a private repository of personal effects, we held that it may be opened without a warrant in the course of an inventory search.

Although these particular considerations may at one time have weighed against the validity of the search, it is now clear under two recent decisions of the United States Supreme Court that they should no longer play material parts in determining the constitutionality of the inventory procedures employed in the instant case. In *Illinois* v. *Lafayette* (1983), 77 L.Ed. 2d 65, the court upheld the inventory search of a shoulder bag as part of a routine procedure followed by police officers when incarcerating an arrested person. Recognizing that the property could have arguably been secured in a less intrusive manner, it specifically rejected the contention that the existence of less intrusive means made the search unreasonable in a constitutional sense. In the court's words:

"We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the stationhouse. It is evident that a stationhouse search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved." *Id.* at 72.

Not only has the court abandoned the principle that the existence of less intrusive means should measure the scope of an inventory search for constitutional purposes, but it has also discarded the notion that a constitutional distinction can be made in the context of the Fourth Amendment between containers having differing characteristics. In *United States* v. *Ross* (1982), 456 U.S. 798, it was held with respect to the warrantless search of an automobile that the existence of probable cause justifies the search of every part of the vehicle and its contents that may conceal the object of the search. The rationale for the holding was set forth by Justice Stevens as follows:

"When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

"This rule applies equally to all containers, as indeed we believe it must. One point on which the Court was in virtually unanimous agreement in *Robbins* was that a constitutional distinction between 'worthy' and 'unworthy' containers would be improper. Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch baskets, and orange crates were placed on one side of the line or the other, the Fourth Amendment forecloses such a distinction. * * *

"As Justice Stewart stated in *Robbins*, the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view. * * * But the protection afforded by the Amendment varies in different settings. The luggage carried by a traveler may be searched at random by a customs officer; the luggage may be searched no matter how great the traveler's desire to conceal the contents may be. A container carried at the time of arrest often may be searched without a warrant and even without any suspicion concerning its contents. A container that may conceal the object of a search authorized by a warrant may be opened immediately * * *." *Id.* at 821-823.

Although *Lafayette* and *Ross, supra,* are to varying degrees distinguishable on their facts from the case *sub judice,* those aspects of the analysis underpinning their holdings that we have noted above clearly have significance in other

settings and may be applied equally well to the issues confronting us in this appeal. It is our conclusion, therefore, that the search of the vehicle impounded as a result of Bronaugh's arrest was not rendered unconstitutional merely because the closed containers found in the trunk could have been secured by less intrusive means, or because their characteristics bespoke a reasonable expectation of privacy by shielding the contraband from public view.

In our judgment, the question before us in plain and simple terms is whether the search was reasonable under all the attendant facts and circumstances. We hold that it met the constitutional standard of reasonableness for two reasons. In the first place, the opening of the containers was reasonably related to and effectively served the legitimate societal interests that are said to justify an inventory search. In the second place, it is clear from the record that the vehicle was lawfully impounded, and that the officer was acting in accordance with standard departmental procedures. Under the circumstances, then, we must conclude in the words of *Ross, supra,* that where, as here, a legitimate search is under way, and its purpose and limits have been appropriately defined, the individual's interest in securing property out of public view by placing it in a closed container within the trunk of an automobile must give way to the governmental interest in conducting a prompt and efficient inventory search. The second assignment of error is, accordingly, without merit.

## IV

In his remaining assignment of error, Bronaugh asserts that the opening of the suitcase found in the impounded vehicle must be held unconstitutional under the reasoning employed in *Robbins* v. *California* (1981), 453 U.S. 420.

In *Robbins,* it was held that a closed piece of luggage found in the course of the lawful search of an automobile cannot be opened without a warrant unless the container so clearly announces its contents that they can be said to be obvious to an observer. *Id.* at 429. This result was mandated by prior case law in the eyes of a majority of the court because an individual has a reasonable expectation of privacy, within the meaning of the Fourth Amendment, in any closed opaque container that shields its contents from public view.

We decline to apply the general rule articulated in *Robbins* to the particular facts of the instant case for several reasons, not the least of which is that its rationale appears to be entirely inconsistent with our conception of the prevailing attitudes concerning the justification for and scope of warrantless inventory searches. Notwithstanding this rather obvious inconsistency, we are further persuaded that the value of the holding insofar as it endeavored to frame a constitutional rule of general application has been appreciably diminished, if not totally impaired, by the analysis since adopted by the United States Supreme Court in *Ross, supra.*[3] For these reasons, the third assignment of error is without merit.

The judgment of the court of common pleas is hereby affirmed.

*Judgment affirmed.*

SHANNON, P.J., BLACK and DOAN, JJ., concur.

---

[3] One of the dissenters in *Ross* stated that the court was unambiguously overruling "the disposition" of *Robbins* even though it gingerly avoided an explicit statement that it was overruling the case itself. 456 U.S. 798, at 841 (Marshall, J., dissenting).