## State v. Jenkins
*[Cite as 5 AOA 145]*

*Case No. 57220, 57221*
*Cuyahoga County, (8th)*
*Decided July 5, 1990*

John T. Corrigan, Esq., Cuyahoga County Prosecutor, Justice Center, 1200 Ontario Street, Cleveland, OH 44113, for Plaintiff-Appellee.

Beverly J. Pyle, Esq.. Public Defender's Office, Marion Building, Room 307, 1276 West Third Street, Cleveland, OH 44113, for Defendant-Appellant.

FORD, J.

Defendant-appellant, William Jenkins a.k.a Billy Winter, appeals from his convictions in the Cuyahoga County Court of Common Pleas in Case No. CR230019 for the following offenses occurring on July 20, 1988:

1) carrying a concealed weapon, R.C. 2923.12, with violence specifications for prior convictions of armed robbery and manslaughter;

2) possessing criminal tools, R.C. 2923.24, with the same violence specifications; and

3) having a weapon while under disability, R.C. 2923.13, with gun and violence specifications. Appellant was found not guilty of possessing cocaine, R.C. 2925.11.

Additionally, in Case No. CR229784, appellant entered a plea of guilty to the July 12, 1988 offense of drug trafficking, R.C. 2925.03. The two cases were consolidated for purposes of this appeal, although appellant does not appear to have assigned any error relative to CR229784. That case is affirmed accordingly.

### I. THE FACTS, GENERALLY

The state presented the testimony of Cleveland Police Patrolman Michael Olenick, who testified that he received a police radio call to go to 2375 East 40 Street, where an automobile accident had occurred. When Patrolman Olenick arrived at that location, he noticed that the fire department and EMS were already on the scene, and a crowd had gathered around two badly damaged automobiles. One automobile, a Chevrolet Citation, had been parked at the curb and was struck from behind, while the other automobile, a 1979 Oldsmobile Toronado, had extensive front-end damage and was up on the treelawn and sidewalk of an adjacent yard. The police were questioning members of the crowd when appellant approached Patrolman Olenick and his partner, and freely admitted that he was the owner and operator of the Oldsmobile.

Patrolman Olenick testified that appellant and the owner of the Chevrolet were placed in the zone car in order to fill out an accident report, and appellant's inoperable automobile was to be prepared for towing. The owner of the Chevrolet arranged for private towing services.

Appellant was issued traffic citations for failure to control his vehicle and for displaying fictitious license tags (appellant's 30-day tags had not been issued for a 1979 Oldsmobile Toronado). Patrolman Olenick, pursuant to filling out a standard police vehicle tow authorization form, or "tow sheet", approached appellant's automobile in order to obtain a description of the damage to the car, and to take an inventory of the property within the car.

Patrolman Olenick testified that he first looked through the window of the car and saw two clear plastic packages of syringes, one on the front driver's side floor and one on the front seat. On the front passenger's side floor, Patrolman Olenick saw a black camera or binocular cases. He picked the case up off of the floor and opened it, finding a fully loaded .38 caliber Smith and Wesson handgun. State's Ex. 1. Patrolman Olenick then took inventory of the contents of the trunk of appellant's car, where he discovered a white shopping bag containing four or five smaller paper bags in which there was found many freebase pipes, wire mesh, and a bottle of alcohol. Cleveland Police Detective Bruce Taylor testified that he had test-fired the handgun and determined it to be operable. Cleveland Police Scientific Examiner Cynthia Lewis testified that one of the freebase pipes held a residue of a white substance testing positive for cocaine.

Patrolman Olenick told the jury that he asked appellant about the handgun, and appellant stated that it was his and that he carried it for protection at the little store he works at located at East 55 Street and Outhwaite. Appellant further stated that the syringes and other drug paraphernalia were indeed his. At that time, appellant was read his *Miranda* rights and arrested.

For the defense, Nathaniel Day testified that he often helps appellant at Swanson and Co. carryout store at East 55 Street and Outhwaite. Mr. Day said that appellant called for his services on July 19 or 20, 1988. Mr. Day testified that the handgun, State's Ex. 1, was left to him 12 years ago by his deceased father, and he carried it in a camera case to appellant's store that day for protection. While sweeping at the store, Mr. Day removed the gun because it was in the way, and allegedly placed it on the passenger's side floor of appellant's automobile, parked nearby. Mr. Day later had a few beers and forgot about the gun. Mr. Day further testified that he never loaded the handgun, and that the bullets must have been in the gun since his father had it, 12 years prior.

Appellant testified on his own behalf, stating that he left Swanson's at approximately 11:30 p.m. on the night in question, and was at fault in the accident, which occurred just around the corner from his home. Appellant further testified that he denied ownership of the handgun at the scene. Regarding the drug paraphernalia, appellant testified that either his girlfriend put it in the car, or such items had been in the car since "back in the days when (he) was a drug addict." Appellant testified that the syringes were in the trunk, not the front seat, and Patrolman Olenick was mistaken.

On cross-examination, appellant admitted that he still uses cocaine, but insisted that he "shoots" it, and does not smoke it. Moreover,

appellant admitted that he did, in fact, know that the freebase pipes were in his car, but only intended to sell them in his store. He also admitted that he put the syringes in the car, and that he had prior convictions for aggravated robbery, manslaughter, drug abuse and possessing criminal tools.

Appellant was found guilty on three of the four counts of the indictment, and timely filed notice of appeal to this court, assigning four errors for our review.

## II. INVENTORY SEARCH

In his first assignment of error, appellant argues:

"THE TRIAL COURT ERRED BY OVERRULING MR. JENKINS' MOTION TO SUPPRESS THE FRUITS OF THE WARRANTLESS SEARCH OF THE CONTENTS OF MR. JENKINS' VEHICLE OBTAINED UNDER THE GUISE OF AN INVENTORY SEARCH, VIOLATING MR. JENKINS' RIGHTS UNDER ARTICLE I, §14 OF THE OHIO CONSTITUTION, AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION."

Appellant filed a motion to suppress evidence recovered from the search of his automobile, which search was without warrant or probable cause. A hearing on appellant's motion was held on November 21, 1988, ending with a denial of such motion, the trial court having found that the search was an inventory search, permissible under the United States Supreme Court decision of *Colorado v. Bertine* (1987), 479 U.S. 367.

In *Bertine,* the high court recognized that "inventory searches are now a well-defined exception of the warrant requirement of the Fourth Amendment. "*** The policies behind the warrant requirement are not implicated in an inventory search nor is the related concept of probable cause." *Id.* at 371; *South Dakota v. Opperman* (1976), 428 U.S. 364; *Illinois v. Lafayette* (1983), 462 U.S. 640; *State v. Robinson* (1979), 58 Ohio St. 2d 478. The court noted the policy considerations behind the inventory search exception:

"*** inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine, supra,* at 372.

It was held essentially that inventory searches are proper when police follow standardized" procedures, and do not act in bad faith or for the sole purpose of investigation. *Id.* The scope of an automobile inventory search may properly extend to the trunk, glove compartment, and the opening of closed containers therein. See *State v. Bronaugh* (1984), 16 Ohio App. 3d 237; *Bertine, supra.*

The Ohio Supreme Court limited the boundaries of permissible inventory searches in *State v. Caponi* (1984), 12 Ohio St. 3d 302, wherein it was held at syllabus:

"A search which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an 'inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search."

Further, in *State v. Himmelhaver* (1987), 39 Ohio App. 3d 42, the appellate court held:

"A search of an impounded automobile which is not conducted in the manner of a standard police inventory search (as evidenced by the lack of completed inventory forms kept for future reference and the disagreement between the searching officers as to the exact location of where items were found) does not constitute an 'inventory search' and may not be used as a pretext to conduct a warrant less evidentiary search."

More specifically, this court has upheld the propriety of an inventory search of an automobile disabled due to an accident, necessitating towing as in the instant case. *State v. Howard* (March 24, 1983), Cuyahoga App. No. 44438, unreported.

We must determine whether the officers in the instant case were following standardized police procedures.

Cleveland Codified Ordinances Section 405.02, entitled "Impounding of Vehicles", provides in part:

"Police officers are authorized to provide for the removal of a vehicle under the following circumstances:

"***

"(d) When any vehicle is parked on any street or other public property and displays illegal license plates or fails to display the current lawfully required license plates.

"***

"(f) When any vehicle has been damaged or wrecked so as to be inoperable ***."

At the hearing on the motion to suppress, the prosecution presented a three-page Cleveland Police Department General Police Order No 22-87, in effect at the time of the incidents *sub judice,* which provides in part:

"The 'Vehicle Damage and Property Inventory' section (of the tow sheet) shall be

completed in its entirety for each vehicle towed. A full description of vehicle damage and a thorough property inventory is necessary for the protection of the officers involved and to limit claims against the City. If no damage or property is found, the word 'NONE' shall be entered in the respective areas of Form 71-175 rev.

"Property such as jewelry, cameras, radios, TVs, golf clubs, clothing or other valuables shall be removed from the vehicle prior to towing. The property shall be tagged and entered into the District or Unit property book and forwarded to the Property Unit where it may be claimed by the owner. If large amounts of property are found in a vehicle, a Form 1 report shall be made listing the property."

In the instant case, unlike in *Himmelhaver, supra,* the police officers properly filled out a tow sheet, including the sections entitled "Vehicle Damage and Property Inventory" in accordance with the standardized procedures quoted above. Such tow sheet was entered into evidence at appellant's motion hearing and is part of the record on appeal. Clearly, as required by the United States Supreme Court in *Bertine, supra,* the police in the instant case were following standardized police procedures during the inventory search of appellant's car.

Further, there has been no evidence presented indicating any bad faith on the part of the police, nor is there any support for concluding that this was a pretextual investigatory search. The police merely responded to a call for a routine automobile accident, and appellant's car, inoperable and without legitimate license plates, was prepared for impounding. Part of this preparation, unfortunately for appellant, included a standard inventory search of the contents of the car for the policy reasons stated in *Bertine.* The police conducted a permissible inventory search, the purpose of which was not investigatory.

Appellant's first assignment of error is not well taken.

### III. SELF-INCRIMINATING STATEMENTS

In his second assignment of error, appellant contends:

"MR. JENKINS WAS DENIED HIS CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION WHEN THE POLICE DETAINED HIM IN THEIR ZONE CAR AND OBTAINED STATEMENTS FROM HIM WITHOUT FIRST ADVISING HIM OF HIS MIRANDA RIGHTS."

Appellant claims that his admissions to Patrolman Olenick regarding knowledge and ownership of the gun and drug paraphernalia in his car were inadmissible since it is undisputed that he had not yet been read his rights under *Miranda v. Arizona* (1966), 384 U.S. 436. Appellant states that although there may not have been a formal arrest at that time, there had been "'restraint on freedom of movement' of the degree associated with a formal arrest", which is all that is required to be "in custody". *California v. Beheler* (1983), 463 U.S. 1121, at 1125, quoting *Oregon v. Mathiason* (1977), 429 U.S. 492, at 495.

The issue is whether appellant was effectively subjected to a "custodial interrogation" at the time he made the admissions, thereby necessitating a reading of the *Miranda* warnings. This determination depends on the facts and circumstance of each case, and should be viewed from the perspective of an objective reasonable man in the defendant's position. *State v. Warrell* (1987), 41 Ohio App. 3d 286, at 287, citing *Berkemer v. McCarty* (1984), 468 U.S. 420. In *Miranda,* the term "custodial interrogation" was defined as:

"*** questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

The high court elaborated on this definition in *Mathiason, supra,* at 495, wherein it stated:

"Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody'. It was that sort of *coercive environment* to which Miranda by its terms was made applicable, and to which it is limited." (Emphasis added).

A mere showing that questioning took place in a police station house, or that police already suspected the person questioned is insufficient to prove a custodial interrogation. *Id.; State v. Strawser* (1983), 10 Ohio Misc. 2d 21. Nor is it sufficient merely to show that the questioning occurred in a law enforcement vehicle, as in the instant case. Cf. *State v. Franklin* (July 27, 1989), Cuyahoga App. Nos. 55604 and 55684; *State v. Spencer* (April 3, 1980), Cuyahoga App. No. 40826, unreported; *Warrell, supra* (evidence revealed during the preparation of an accident report).

Moreover, the rule of *Miranda* was not intended to impair police in the performance of their traditional investigatory functions.

"General on-the-scene questioning as to facts surrounding a crime or other general questioning

of citizens in the fact-finding process is not affected by our holding." *Miranda, supra,* at 477.

"Thus, general on-the-scene questioning does not constitute custodial interrogation requiring *Miranda* warnings." *Spencer, supra,* at Loc. p. 6; see also *State v. Farndon* (1984), 22 Ohio App. 3d 31; *State v. Darden* (Jan. 21, 1988), Cuyahoga App. No. 53285, unreported.

In the instant case, appellant made the admissions of ownership while in the zone car, *with the owner of the parked car which appellant ran into,* for the sole purpose of filling out an accident report. The officer who put the simple questions to appellant was merely conducting general on-the-scene questioning. Such officer had no way of knowing that appellant did not have plausible explanation or justification. In short, there did not exist the type of "coercive environment" necessary to establish a "custodial interrogation."

Appellant's second assignment of error is not well taken.

### IV. SUFFICIENCY OF EVIDENCE

In his third assignment of error, appellant argues:

"THE TRIAL COURT ERRED AND DENIED WILLIAM JENKINS HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS WHEN HE WAS CONVICTED OF CARRYING A CONCEALED WEAPON AND HAVING A WEAPON WHILE UNDER DISABILITY WHEN THERE WAS INSUFFICIENT PROOF THAT WILLIAM JENKINS KNOWINGLY VIOLATED THE STATUTES."

Essentially, appellant argues that the state failed to prove the element of his having "knowingly" carried a concealed weapon, R.C. 2923.12, and "knowingly" having a weapon while under disability, R.C. 2923.13. It is appellant's position that he did not know the gun was in his car.

The weight of the evidence and the credibility of witnesses are matters left primarily to the trier of facts. *State v. DeHass* (1967), 10 Ohio St. 2d 230. A jury verdict will not be reversed if there is substantial evidence upon which a jury might reasonably conclude that each element of the offense had been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St. 2d 169. The court of appeals in *State v. Martin* (1983), 20 Ohio App. 3d 172, at 175 stated:

"As to the claim of insufficient evidence, *the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the* essential elements of the offense beyond a reasonable able doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson v. Virginia* (1979), 443 U.S. 307, 319; *United States v. Lincoln* (C.A. 8, 1980), 630 F.2d 1313, 1316; *Dorman v. State* (Alaska 1981), 622 P: 2d 448, 147, 149, 223 S.E. 2d 131, 132; *State v. Sorgee* (1978), 54 Ohio St. 2d 464 (8 O.O.3d 452); *State v. Robinson* (1955), 162 Ohio St. 486 (55 O.O. 388]." (Emphasis added). Both R.C. 2923.12 and R.C. 2923.13 utilize the culpable mental state of *knowingly:*

"§2923.12 Carrying concealed weapons.

"(A) No person shall *knowingly* carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance." (Emphasis added).

"***

"§2923.13 Having weapons while under disability.

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall *knowingly* acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"(1) Such person is a fugitive from justice;

"(2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony;

"(3) Such person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse, or has been adjudged a juvenile delinquent for commission of any such offense;

"(4) Such person is drug dependent or in danger of drug dependence, or is a chronic alcoholic;

"(5) Such person is under adjudication of mental incompetence." (Emphasis added).

Proof of a culpable mental state often must be established by circumstantial evidence. Cf. *State v. Smith* (March 13, 1980), Cuyahoga App. No. 40844, unreported; *State v. Huffman* (1936), 131 Ohio St. 27. "Knowledge as an element of an offense may be implied from established facts." *State v. Faust* (Sept. 29, 1983), Cuyahoga App. No. 45212, unreported, at Loc. p. 2.

In the instant case, appellant was the only person in the car at the time of the accident, and the handgun was in the area of the front seat of his car. Further, the state presented testimony

from a police officer that appellant acknowledged that the gun was his. The trier of fact is under no obligation to accept appellant's denial of knowledge at trial. *State v. Howard* (March 24, 1983), Cuyahoga App. No. 44438, unreported, citing *DeHass, supra.*

There was sufficient evidence for a reasonable jury to conclude that knowledge had been adequately proven. For this reason, appellant's third assignment of error is not well taken.

## V.

In his fourth and final assignment of error, appellant contends:

"MR. JENKINS WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION AND SENTENCING FOR POSSESSION OF CRIMINAL TOOLS IN VIOLATION OF R.C. 2923.24, A FELONY OF THE FOURTH DEGREE."

Appellant states that he should have been charged only with the misdemeanor violation of R.C. 2925.12, possessing drug abuse instruments, which provides in part:

"(A) No person shall knowingly possess or use any instrument article or thing whose customary and primary purpose is for the administration of a dangerous drug, other than marijuana, when the instrument involved is a hypodermic or syringe..."

It is clear that the mere possession of syringes can only constitute a violation of the specific R.C. 2925.12, and may not be punished under the general proscription against possessing criminal tools, R.C. 2923.24. *State v. Chandler* (Nov. 22, 1989), Cuyahoga App. No. 57731, unreported; *State v. Volpe* (1988), 38 Ohio St. 3d 191. However, R.C. 2925.12 applies only "when the instrument involved is a hypodermic or syringe." *State v. Alexander* (Dec. 14, 1989), Cuyahoga App. No. 56406, unreported; *State v. Mateo* (Aug. 17, 1989), Cuyahoga App. No. 55833, unreported.

In the instant case, appellant was indicted under R.C. 2923.24, possessing criminal tools, "to-wit: drug paraphernalia." The state's bill of particulars did not specify the type of paraphernalia. Although there was evidence presented that appellant was in possession of, *inter alia,* syringes, appellant was not indicted under R.C. 2925.12. The instant case is, however, easily distinguished from *Chandler, supra,* since appellant herein also possessed freebase pipes including a residue of cocaine. Such possession is not included within the purview of R.C. 2925.12, but rather is properly punishable under the possessing criminal tools statute, R.C. 2923.24.

Thus, the appellant's contention that he should have been convicted only under R.C. 2925.12 instead of under R.C. 2923.24 is without merit.

Appellant's fourth assignment of error is not well taken, and the judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

*Judgment affirmed and cause remanded.*

KRUPANSKY, P.J., and PRYATEL, J., concur.

Sitting by assignment, Judge Robert F. Ford, Retired Judge of the Geauga County Common Pleas Court and Judge August Pryatel, Retired Judge of the Eighth Appellate District of Ohio.