**Charles HELM, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 89–SC–561–MR.

Supreme Court of Kentucky.

July 3, 1991.

Rehearing Denied Sept. 26, 1991.

David Murrell, Murrell and Murrell, Geoffry Morris, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Michael L. Harned, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

REYNOLDS, Justice.

Charles Helm entered a conditional guilty plea pursuant to RCr 8.09 and was sentenced to twenty years imprisonment for robbery in the first degree, which was enhanced to thirty-five years imprisonment for being a PFO in the second degree. The issue preserved for appeal was whether the search and seizure involving an automobile which appellant was alleged to have been driving was lawful under the Fourth and Fourteenth Amendments of the United States Constitution.

The record of the suppression hearing discloses that a Taylor Drug Store in Louisville, Kentucky, was robbed on the evening of October 28, 1988. The gunman ordered the pharmacist to place both money and Schedule II drugs in a bag. Subsequently, in the early morning hours of October 29, two Dayton, Ohio, police officers on patrol and while driving toward an intersection, observed an automobile make a quick turn into the intersection and travel past them in the opposite direction. The car was without a front license plate as required by Ohio law and, as the automobile passed the officers, the driver and the silver Monte Carlo car were further observed. The officers turned around and followed the car which then sped up and disappeared. Shortly thereafter the officers saw appellant walking on the sidewalk. He was stopped and asked for identification and name. Appellant was without any identification, but related that his name was Charles Helm. When asked the location of the car that he had been driving, appellant's reply was, "What car?" The police unit was equipped with a computer terminal and the officers determined by use of this equipment that there was an outstanding Ohio robbery warrant for Helm's arrest. Appellant was arrested and taken to jail where a search revealed a single car key.

After booking Helm, the officers returned to the area and found a 1978 silver Monte Carlo less than a block from the place of arrest. The car motor was warm and it had a Kentucky license plate. The vehicle could not be entered from the driver's side, but the passenger side was not locked and Officer Clark determined that the key would operate the ignition. Clothing and paraphernalia were observed lying in the back seat.

The officers determined to tow the vehicle based on police policy. A records check disclosed a Kentucky registration and that the owner of the vehicle was a

resident of Somerset, Kentucky. Wallace, the other officer, advised that it was common practice after arresting a subject to tow the car for safekeeping. The car, which had a Kentucky plate, was not on an active/stolen report and Wallace also testified they had no way to contact the owner and it would be in the best interest to tow the vehicle and hold it as this was a high crime area. The car trunk was not equipped with a lock and it was thereafter unfastened. The officers noted a paper bag containing money and bottles of Schedule II drugs with Louisville Taylor Drug Store labels. A search warrant was subsequently obtained and ammunition, a revolver, and other items were found in the car.

As his sole assignment of error, appellant contends that the evidence found in the automobile was seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Section Ten of the Kentucky Constitution. He specifically asserts that the impoundment and subsequent search of the automobile which he had been driving violated his state and federal constitutional rights to be protected from unreasonable searches and seizures.[1] Appellant claims that the inventory search was not valid because his vehicle was illegally impounded. He states there was no evidence that the car was parked unsafely or illegally or that its contents were in danger. Since the impoundment was, therefore, unlawful, appellant maintains the subsequent inventory search by Dayton police officers was also unlawful.

■ It appears from the suppression record that the Dayton police, at the time appellant was arrested, were acting upon the authority of an Ohio warrant that was for a past crime committed against the state of Ohio. They were not subject to

the constitution and the laws of Kentucky in the performance of their official duties. Our state constitution in this situation has no extraterritorial effect. Inasmuch as the Dayton police were not in any way amenable to our laws in arresting the appellant and impounding the automobile, their authority to make the impoundment and inventory search is not the subject of an investigation by the courts of this state.

Section Ten of the Kentucky Constitution is not applicable in the case before us. This Court has recognized that our state's constitution is a limitation only on the state to authorize, and its officers to engage in a search for, and seizure of evidence of crime. *McMahan's Administratrix v. Draffen*, 242 Ky. 785, 47 S.W.2d 716 (1932). The conduct of the Dayton police as to the impoundment and subsequent search of the vehicle driven by appellant is to be judged by reference to the Ohio constitution. Specifically, in this case, Article I, Section 14 of the Ohio Constitution which provides for "the right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated ..." is applicable. Accordingly, did the Dayton police officers' search of the car driven by appellant constitute a violation of the Fourth and Fourteenth Amendments of the United States Constitution and Section 14, Article I of the Ohio Constitution?

■ The U.S. Supreme Court and the Supreme Court of Ohio recognize the validity of legitimately conducted vehicle inventory searches. *Florida v. Wells*, 495 U.S. ——, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v.*

---

1. We have serious reservations concerning Helm's standing to raise the issue of whether his Fourth Amendment rights had been violated. The automobile in question did not belong to him and apparently he did not lease it or have permission to use it. The evidence does not explain why he happened to be in possession of it near the time of arrest. Helm's use of the vehicle and his possession of the ignition key did not necessarily establish standing or a "legitimate expectation of privacy" in the automobile.

*See, United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Appellant referred to standing, but it was neither denied nor argued by Commonwealth. Since the evidence is unclear, we decline to address the issue of standing on the merits.

*Caponi,* 12 Ohio St.3d 302, 466 N.E.2d 551, 12 O.B.R. 375 (1984); *State v. Robinson,* 58 Ohio St.2d 478, 391 N.E.2d 317, 12 O.O.3d 394 (1979). In *Bertine,* the U.S. Supreme Court recognized that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment .... The policies behind the warrant requirement are not implicated in any inventory search ... nor is the related concept of probable cause." 479 U.S. at 371, 107 S.Ct. at 738. *See also, Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). *Opperman* recognized the constitutional validity of police inventory searches "where the process is aimed at securing or protecting the car and its contents." 428 U.S. at 373, 96 S.Ct. at 3099, 49 L.Ed.2d at 1007. The Ohio Supreme Court followed *Opperman* in the case of *State v. Robinson, supra,* and held:

> The court concluded that a routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile. It appears logical to conclude that a pretextual search is not an inventory search.

58 Ohio St.2d at 480, 391 N.E.2d 317.

In the later case of *State v. Caponi, supra,* the Ohio Supreme Court limited the boundaries of permissible inventory searches by holding that: "A search which is conducted with an investigatory intent and which is not conducted in the manner of an inventory search, does not constitute an 'inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search."

It is apparent that a warrantless inventory search, such as occurred here, is permissible only where the automobile has been legally impounded, and where the inventory search is not merely a pretext for an investigative search.

The policy of impoundment of a vehicle following a felony arrest is not always of questionable legality.[2] The vehicle was owned by a nonresident who could not be readily contacted. The arrestee was a vehicle user denying use, or, in the alternative, was a nonpermissive user.

In *Colorado v. Bertine, supra,* the accused was arrested while in the automobile for driving while intoxicated. Defendant could not remove the car from the road, therefore, the police impoundment and inventory search was proper.

In the case of *State v. Bronaugh,* 16 Ohio App.3d 237, 475 N.E.2d 171, 16 O.B.R. 260 (1984), the defendant was arrested while in the automobile. The car did not belong to the defendant and his passenger/companion was not permitted to drive the car because he did not have a valid operator's license. The impoundment of the vehicle was not found to be illegal.

While the facts of this case do not clearly fall within the situations enunciated in *Florida v. Wells, supra; Colorado v. Bertine, supra;* or *South Dakota v. Opperman, supra,* the record does not indicate unreasonable behavior or motivation or bad faith on the part of the Dayton police. We find no support indicating that this was a pretextual investigatory search. The officers were following standard practice and procedure which allowed them to impound and inventory for safekeeping purposes the car of an arrested individual. We recall that appellant was not the registered owner of the vehicle and denied being the permissive user. Added to this state of the facts was the good faith action of the police officers in following police procedure. Upon discovery of the paper bag containing money and drugs the officers obtained a search warrant prior to conducting a thorough search.

**2.** Were § 10 of the Kentucky Constitution applicable to the facts herein, the legality of the impoundment of appellant's vehicle would be questionable under this Court's decision in *Wagner v. Commonwealth,* Ky., 581 S.W.2d 352 (1979), (overruled on other grounds by *Estep v. Commonwealth,* Ky., 663 S.W.2d 213 [1983]). In light of *Estep,* the holding in *Wagner* as to automobile impoundment without a warrant is questionable.

We conclude that impoundment of the car allegedly driven by appellant was not illegal under either the Fourth or Fourteenth Amendments of the United States Constitution or Article I, Section 14 of the Ohio Constitution. As the vehicle was legally impounded, the officers had a right to conduct an inventory search thereof.

The judgment of Jefferson Circuit Court is affirmed.

STEPHENS, C.J., and LAMBERT, SPAIN and WINTERSHEIMER, JJ., concur.

COMBS, J., dissents by separate opinion.

LEIBSON, J., also dissents by separate opinion in which COMBS, J., joins.

COMBS, Justice, dissenting.

I respectfully dissent from the majority opinion, and would suppress the seized evidence.

Almost 215 years ago our forefathers brought forth on this continent a new nation conceived in liberty and dedicated to the proposition that all men are created equal and endowed by their Creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness. That to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed.

By this hallowed document our forefathers placed in proper perspective the role of the state and that of the people. They gave the people all of the rights and placed the duty upon the government officials to preserve and protect those rights.

This case challenges those basic principles. Here appellant, in the wee hours of the morning of October 29, was walking on a street in Dayton, Ohio, when he was stopped by the Dayton police. The police testified that they recognized him as the driver of a silver Monte Carlo they had seen a few minutes earlier. Without Mirandizing him they proceeded to question him as to his name, and the whereabouts of the car. Upon learning his name they almost immediately ascertained that there was an outstanding warrant for his arrest. He was then arrested and searched. They found a General Motors automobile key. Thereafter they took him to jail and returned to the area to search for the vehicle, which was promptly discovered and searched. The officers testified that they found some clothing in the back seat and in furtherance of a departmental policy they had to secure the clothing, and that the same policy required impoundment of the vehicle which necessitated an inventory. To do this they had to pry open the trunk lid, whereupon they found the narcotics which had been stolen from Taylor Drug Store.

It was conceded that there was nothing unlawful in walking along the street. They testified that the earlier observations of the car justified further search. The following is a description by one of the officers as to his observations. He was asked this question:

Q. And just so our court's clear, would you kind of describe the actions of the defendant and why you initially wanted to pull him over?

A. He just looked like he didn't want to talk to us, he looked like he was making evasive movements to keep from falling in behind us, or our falling in behind him I should say. It looked like his course was deviated at the last second, an unscheduled turn, looked like he had contrived an effort to conceal his face and when we U turned he floored it. All these things were fairly indicative to me with fifteen years' experience the man didn't want to talk to us.

The recent case of *Viveros v. State of Texas*, 799 S.W.2d 458 (Tex.App.—Corpus Christi 1990), is amazingly similar to this case. In reversing the conviction and suppressing the evidence the Texas appellate court correctly stated the principles involved here and said:

A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied. *Michigan Dept. of State Police v. Sitz*, —— U.S.

——, ——; 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). Stops by roving patrols are considered Fourth Amendment seizures. *See e.g., Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979). This stop was an intentional termination of freedom of movement by the State; thus, it was a Fourth Amendment seizure.

Our first inquiry is whether the seizure was reasonable. The constitutionality of a seizure for the purposes of investigation is measured by the reasonable suspicion test and not the probable cause standard set forth in the Constitution. *Id.* at 664, 99 S.Ct. at 1401; *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

For a stop to be reasonable under the legal suppression standard, there must be some indication or reasonable inference of criminal conduct. Here there was no indication of any criminal conduct on the part of appellant nor could any such inference be drawn.

To permit police to stop a citizen on the basis of such flimsy factors as existed here is to create a condition far more dangerous than those existing at the time of the General Warrants issued by the infamous Star Chamber of England. At least the arresting officer there had a warrant in his possession. True, it didn't name a defendant nor define a crime, but he had a Writ. To sanction this seizure is to allow a stopping and an arrest based upon the mere suspicion of the arresting officer.

Nowhere did the people ever give a law enforcement agency such unbridled authority, nor did they ever surrender their precious liberties to be free of such intrusions.

That the appellant robbed Taylor Drug Store at gunpoint cannot be denied or disputed. But suppressing this evidence is a small price to pay for the preservation of our constitutions. The policemen who testified at the suppression hearing were well informed as to police department policies concerning impoundment of cars and inventory searches. It is indeed regrettable that they were so ignorant of our supreme law—our constitutions.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The appellant's car was legally parked at the curb and unoccupied. There were no exigent circumstances. The fact that the appellant had been placed under arrest and taken to the local jail provided no more justification to find and search his car without a warrant than it would have provided for a warrantless search of his home.

This was *not* a legitimate inventory search by any stretch of the imagination, and we should not stretch the constitution to legitimize it. The search was a violation of the appellant's constitutional protection against illegal search and seizure as guaranteed by both the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution.

We should reverse and remand.

COMBS, J., joins this dissent.