**UNITED STATES of America**

v.

**Frank BATES, Jr.**

**Crim. No. 75–B–104.**

United States District Court,
S. D. Texas,
Brownsville Division.

July 28, 1975.

Edward B. McDonough, Jr., U. S. Atty., Houston, Tex., and John Patrick Smith, Asst. U. S. Atty., Brownsville, Tex., for the Government.

Richard A. Mayhan, Houston, Tex., for defendant.

### MEMORANDUM AND ORDER

GARZA, Chief Judge.

The Defendant Frank Bates, Jr. stands charged by Grand Jury Indictment in Count One of importing approximately 2,798 ionamin capsules in violation of 21 U.S.C.A. § 952(a); Count Two charges the Defendant with importing 11 bottles of Robitussin A–C cough syrup in violation of 21 U.S.C.A. §

952(a); and Count Three charges the Defendant with possessing approximately 2,798 ionamin capsules, with intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1). To these charges the Defendant has entered a plea of not guilty and has filed a Motion to Suppress and Motions for a Bill of Particulars, Discovery, Inspection and Pre-trial Production of Documents and Objects.

On June 9, 1975, the Defendant appeared with counsel and announced that all of his motions, with the exception of his Motion to Suppress, had been satisfied. This Court at that time determined that the Motion to Suppress would be carried along with the trial of this action.

On June 27, 1975, the Defendant's trial began. At that trial, the Government called Customs Inspectors Mariam C. Medley, James W. Nowell, Drug Enforcement Administration Agent John D'Antuono and Drug Enforcement Administration Agent Kenneth Leo Pulte to the stand. The Defendant did not call any witnesses to the stand and rested following the close of the Government's testimony.

For purposes of the Motion to Suppress it appears that on April 14, 1975, at approximately 2:30 a. m. the Defendant Frank Bates, Jr. arrived at the Gateway International Bridge from the Republic of Mexico driving a 1974 Cadillac. Customs Inspector Mariam Medley, on finding out the Defendant's name, sent the Defendant to secondary inspection pursuant to a prior request from Drug Enforcement Administration Agent D'Antuono. At this point in time the Defendant was out on bond on a previous narcotics case and Agent D'Antuono had requested that he be notified in the event that the Defendant presented himself to any of the ports of entry along the Rio Grande River. Under the conditions of the Defendant's bond, he could not go to Mexico without prior approval from this Court.

Agent D'Antuono immediately came to the Gateway International Bridge and arrested the Defendant for violation of the conditions of his bond and took him to the Cameron County Jail. Because of the Defendant's prior record of narcotics dealings in the Republic of Mexico, Agent D'Antuono, along with Customs Agents, wanted to inspect the Defendant's vehicle. However, at this early hour of morning there was insufficient personnel to perform a search of the car immediately and it was at that time thought that the search would have to be delayed until 6:00 a. m. when more inspectors would come on duty. However, the Customs Inspectors were able to start searching the Cadillac sooner than they had originally thought and by the time that Agent D'Antuono had returned from leaving the Defendant at the Cameron County Jail the Customs Inspectors, principally Inspector Nowell, had discovered that the left rear tire of the automobile was visually different from the three remaining tires in that there was grease on the tire which indicated that the tire had been recently handled. Upon returning to the bridge, Agent D'Antuono assisted Agent Nowell in removing the tire. Agent D'Antuono bounced and shook the tire and noticed that it felt too heavy for a tire filled only with air. Agent D'Antuono then went back to the Cameron County Jail to get the Defendant and thereafter returned to the bridge to open the tire in the Defendant's presence. At approximately 3:45 a. m. Agent D'Antuono and Inspector Nowell opened the tire and therein found 2,798 ionamin capsules and 11 bottles of Robitussin A–C cough syrup.

The written Motion to Suppress filed by the Defendant requests the Court to suppress the "345 bottles of Robitussin A–C cough syrup" found in the Defendant's possession. Apparently counsel for the Defendant has confused this case with another Robitussin case in which the Defendant was indicted. In this case the Defendant is not charged with possessing 345 bottles of Robitussin A–C cough syrup, but rather several thou-

sand pills and 11 bottles of Robitussin A–C cough syrup. In oral argument counsel for the Defendant asserted two grounds for suppressing the evidence in the trial of this cause. His first reason is that the search of the Defendant's vehicle was not reasonably contemporaneous with the Defendant's arrest; the Defendant's second ground is that the search was conducted by the Drug Enforcement Administration whose agents are not empowered to search vehicles at ports of entry. This Court wishes to note that counsel for the Defendant has not furnished this Court with any case or statutory authority to support his contentions.

■ The Defendant's first reason for suppressing the evidence in this case—the elapsed time between his arrest and the ensuing search—is factually without merit. In *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the Supreme Court, in holding that a search incident to an arrest must be reasonably contemporaneous with the arrest, recognized that the reasonableness of the time delay must be tested in light of the particular circumstances in each situation. In the case at bar the search occurred only an hour and fifteen minutes after the Defendant was arrested. Taking into account this short delay between the arrest and the search and the reason for the delay, lack of manpower to search the car immediately, this Court finds that the search of the Defendant's car was reasonably contemporaneous with the arrest. Defendant's Motion to Suppress the evidence on the grounds of the delay between the arrest and the search is without merit and is hereby denied.

■ The second ground asserted by the Defendant, the lack of authority of Drug Enforcement Administration Officers to search vehicles at the port of entry, is also legally and factually without merit. The evidence before this Court is that the search of the Cadillac was conducted jointly by Agent D'Antuono of the Drug Enforcement Administra-

tion and Customs Inspector Nowell of the Bureau of Customs. Hence, this was not solely a D.E.A. search, but instead was a search directed on the aegis of the Customs Officer who had every right to search persons and vehicles seeking entry into the United States from abroad. *United States v. Glaziou,* 402 F.2d 8 (CA 2 1968); *United States v. Sang,* 416 F.2d 306 (CA 5 1969).

Even if this Court were to find that this was a search conducted under the sole authority of the Drug Enforcement Administration, the Court would still find that this search was a legal search. The Drug Enforcement Administration came into being as a result of the President's Reorganization Plan Number 2 of 1973 presented to a joint session of the Senate and House of Representatives on March 28, 1973. Pursuant to this plan, both houses of Congress passed a statute which went into effect on July 1, 1973, which brought into being the Drug Enforcement Administration and abolished its predecessor entity, the Bureau of Narcotics and Dangerous Drugs. 5 U.S.C.A. Appendix II; 28 U.S.C.A. § 509, note. Section 1 thereof states that the Department of Treasury (Customs) shall continue to perform those functions related to the discovery and seizure of illicit narcotics at ports of entry. However, it is further provided that this section does not in any way limit the authority of the Department of Justice (Drug Enforcement Administration) to investigate suspected illegal narcotic traffic at ports of entry.

It should be noted that the President of the United States, in his Message of the President which accompanies the statute, envisioned that the primary responsibility, and perhaps the sole responsibility, for port of entry inspections would be vested in the Bureau of Customs. Since Congress did not graft this feature of the President's plan into the statute, this Court must infer that Congress intended that both the Bureau of Customs and the Drug Enforcement Administration have authority to inves-

tigate suspected narcotics traffic at the ports of entry. This interpretation is reinforced by the wording of the statute which specifically provides that both the Bureau of Customs and the Drug Enforcement Administration shall be empowered to perform narcotics investigations at ports of entry.

For the reasons stated above, Defendant's Motion to Suppress based on the lack of authority of Drug Enforcement Administration Agents to investigate narcotic activities at ports of entry, is hereby denied.