Lloyd Wayne SAMPSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Nov. 25, 1980.

Jack E. Farley, Public Advocate, Erwin W. Lewis, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Victor Fox, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

The Grand Jury of Henderson County, Kentucky, on August 15, 1979, returned an indictment against appellant for the offense of first–degree robbery and for being a first–degree persistent felony offender. Kenneth Lainhart and JoAnn Howe Martin were joined in the indictment. Appellant was, however, granted a separate trial. On October 11, 1979, appellant was found guilty on the robbery charge and the jury fixed his punishment at ten years' imprisonment. In a bifurcated proceeding, the jury found appellant guilty of being a persistent felony offender and fixed his punishment at 20 years' imprisonment.

On this appeal the appellant presents four issues. To have a proper understanding of the issues, we need to present the salient facts.

Lloyd Wayne Sampson was released on parole from Eddyville State Penitentiary on the morning of Friday, June 1, 1979, and was met by his 17–year–old fiancee, Robin Willhelm, and her mother, JoAnn Howe Martin. The three of them went to Paducah where the women resided in a trailer home. Sampson conducted some necessary business with the Paducah parole office; he and his fiancee got their blood tests for their upcoming marriage; and the three of them shopped at K–Mart where Sampson shoplifted a false moustache to be used as a disguise in robberies he was then planning to commit. After shopping, the three of them went to Mrs. Martin's trailer, arriving at approximately 2:30 p. m. Shortly thereafter, they all left the trailer to run an errand. When they returned they found Kenneth Lainhart at the trailer. Lainhart and Sampson had met while both were incarcerated at LaGrange State Reformatory. Lainhart was also Mrs. Martin's boyfriend.

Lainhart and Mrs. Martin went to a drive–in movie theatre that night and returned to the trailer around 11:30 p. m. Lainhart and Sampson then began to discuss robbing the Paducah Pizza Hut. Subsequently, they announced to the others that they were going out to purchase some beer. Instead, they proceeded directly to the Pizza Hut where Sampson robbed the manager at gunpoint of $495 of the company's money and Lainhart waited in the getaway car. The employees were forced into a walk–in cooler, with instructions to stay put for 30 minutes. Lainhart and Sampson returned to the trailer where they spent the rest of the night.

The next morning, June 2, 1979, the two men discussed a trip to Henderson in order to get a shotgun from Sampson's mother's house and to rob the Henderson Pizza Hut. The two men and two women left for Henderson and arrived at Sampson's mother's house, in the Baskett area of that city, around 10:00 p. m. Sampson sneaked the shotgun out of the house through a side window and placed it in the trunk of his car. Sampson, Lainhart, Robin and JoAnn then left for the Pizza Hut, with Sampson driving. It was decided that Lainhart would rob the Henderson Pizza Hut since Sampson had done the Paducah job. Arriving at the Pizza Hut around 11:20 p. m., Sampson and Robin went in and ordered a pizza. When it was ready they took it back to the car, which was parked in the Pizza Hut parking lot, and the four of them ate the pizza. The time was now approximately 12:10 a. m. on the morning of June 3, 1979. Sampson then drove out of the parking lot, continued on for a couple of blocks, and then returned to Sambo's Restaurant parking lot, which was adjacent to the Pizza Hut restaurant and parking lot, and parked in a dark spot at the rear and in a

position to make an easy exit. After about 15 minutes Lainhart got out. He transferred a .22–caliber pistol from his back pocket to his front waistband, put Sampson's jacket and hat on, and walked towards the Pizza Hut to rob it.

Unbeknownst to the remaining three occupants of the Sampson auto, Lainhart met with certain difficulties once inside the restaurant. He encountered a customer, Mr. David Sheats. Lainhart poked his gun into Sheats' ribs and ordered, "Let's go, buddy." Sheats valiantly resisted. The ensuing struggle ended with Mr. Sheats having gained control over the gun and using it to hold Lainhart at bay until the police arrived. During the struggle Lainhart had shot Sheats in the hand and bitten him severely about the wrist.

Responding to a robbery–in–progress call, Officer Terry Haynes sped to the scene intending to cover the rear of the Pizza Hut. To do so he drove through the adjacent Sambo's parking lot where he observed Sampson's auto with three occupants and the engine running. As he approached the Sampson auto, its occupants started to exit. Having received a report that a robbery was in progress next door, considering the time to be approximately 1:00 a. m. and observing the behavior of the occupants of an auto whose engine was running, Officer Haynes decided to confront them. He obtained and noted the identification of Sampson, Robin Willhelm and JoAnn Martin. Having no further reason to detain them at that time, Officer Haynes allowed them to leave.

Lainhart was arrested inside the restaurant and duly searched. His wallet contained the name of one of the two women that Officer Haynes had just minutes before confronted and released. Suspecting their involvement in the crime, the police issued an all–points bulletin for the apprehension of that automobile and its occupants. They were apprehended in Morganfield. They were placed in police custody and escorted to Paducah for questioning. Sampson was placed in the Henderson County jail.

On June 8, 1979, Sampson transmitted a note through jail officials to Henderson Police Major Ernest Green. The note said, "Dear Sir, I am ready to make soom (sic) statements, and clear things up," and was signed, "Thank you, Lloyd Sampson." Sampson was transported to police headquarters where he made a question–and–answer confession to his involvement in the Henderson and Paducah robberies.

At trial Sampson charged that on June 4, 1979, in a conference between him and Officer Green, Green told him that his fiancee was pregnant and that if she was to be found guilty of participating in the robbery, she would probably lose custody of her child and the baby would be placed in a foster home. Officer Green denied making any such statement; however, all charges against Sampson's fiancee were dismissed subsequent to his confession.

The appellant argues that his confession should have been suppressed since, (1) it was made involuntarily and (2) it was tainted by an unconstitutional arrest. These two issues will be discussed separately.

*Was appellant's confession involuntary?*

█ Appellant charges that he made his confession by reason of the offer of Officer Green that he "would go on all of his power to get Robin out." We recognize that the totality of the circumstances must be considered in determining whether appellant's confession was involuntary. *Walker v. Commonwealth*, Ky., 561 S.W.2d 656 (1978). There are many important factors that must be taken into consideration before declaring the confession not to be voluntary; e. g., appellant's age at the time of the robbery, his education, his desire to free his fiancee from custody and have the charges against her favorably disposed of, his health, any coercion whether mental or physical, or any request for appellant to confess to an untruth–all must be considered. *Allee v. Commonwealth*, Ky., 454 S.W.2d 336 (1970).

█ The appellant was 21 years of age when he was released from prison and Rob-

in was 17. Appellant was a four–time loser: third–degree burglary, theft, escape, first–degree robbery and persistent felony offender. He had a fifth grade formal education, but had another education that comes only from prison incarceration. Appellant and Robin were arrested on June 3, 1979. At appellant's request, he was permitted to make a question–and–answer confession on June 8, 1979. He was advised of his constitutional rights and, after stating that he understood them, he signed a waiver of rights, which is in words and figures as follows:

"I have read this statement of my rights, and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me."

In a pretrial suppression hearing on the right of the Commonwealth to use the confession, the trial judge determined that the confession was voluntarily made and that it could be used on the trial. The appellant was not physically or mentally abused. He is in good health. There is no charge that appellant was solicited or encouraged to confess to an untruth. KRS 422.110 provides:

"Confession obtained by 'sweating' not admissible.–(1) No peace officer, or other person having lawful custody of any person charged with crime, shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by plying him with questions, or extort information to be used against him on his trial by threats or other wrongful means, nor shall the person having custody of the accused permit any other person to do so.
(2) A confession obtained by methods prohibited by subsection (1) is not admissible as evidence of guilt in any court. The trial judge shall determine the competency and admissibility of any alleged confession under the provisions of this section from evidence heard by him, independent of and without the hearing of the jury trying the case."

In *Allee*, supra, we said: "The trial court's ruling that the confession was voluntary will not be disturbed unless the ruling is clearly erroneous." When we consider the totality of the circumstances surrounding the making of the confession, we are of the opinion that the confession was voluntary and that the trial judge did not err in so holding.

### Was appellant's confession tainted by an unlawful arrest?

Appellant charges that there was no probable cause to warrant his arrest; that is, such cause as to warrant a prudent person in believing that an offense had been committed or was in the act of committing an offense. KRS 431.005.

Probable cause must exist and must be known by the arresting officer at the time of the arrest. It is not sufficient that we look at the evidence in retrospect to find probable cause. The officer could not consider the fact that appellant is a four–time loser, that shortly after his release from prison he stole a moustache from K–Mart, or that on the day prior to the Henderson robbery he and Lainhart robbed the Pizza Hut in Paducah. What the arresting officer had before him was: (1) a police radio dispatcher's report of a robbery in progress at the Henderson Pizza Hut; (2) that as he drove into Sambo's parking lot, which adjoins the Pizza Hut parking lot, at about 1:00 a. m., he encountered an automobile with its engine running and occupied by a male and two females; (3) that the occupants made an attempt to leave the car; and (4) that they were halted by the officer who checked their identifications. Inside the restaurant the robber was searched. Among his possessions was a paper bearing the name of JoAnn Howe Martin, who was one of the two women that the officer had just momentarily before checked for identification and released. The prior knowledge required by an officer is not such as guarantees a conviction; it is

such that makes it probable, by the use of any one or more of our five senses, that in the opinion of the arresting officer the accused had committed or was in the act of committing a felony. KRS 431.005.

We have no hesitation in concluding that the arrest was justified and that there was no wrongful arrest to taint the confession.

*Did the trial court err when it refused to allow the jury to consider the evidence that the charges against Robin were dismissed?*

■ Be it remembered that JoAnn Howe Martin and Robin, a juvenile, who was also appellant's fiancee, together with the appellant, sat in the getaway car while Lainhart proceeded with his part in the robbery. Robin was arrested with the others; however, since she was only 17 years of age, she was taken to juvenile court where, in due time, the charges were favorably disposed of to her. Appellant states that he made the confession on the assurances of Officer Green that all charges against Robin would be dismissed. Officer Green denied making such assurances. Regardless of whether Officer Green made such representations, Robin went free. Appellant makes a play on the word "dismissed." To dismiss or not to dismiss; that is not the question. That is not the thing that brought about the confession. The thing that brought it about, as taken from appellant's cross–examination, was:

"Q. 150   How old is Robin?

A.   Seventeen (17).

Q. 151   Had she ever been in any trouble before?

A.   No, not that I know of.

Q. 152   Okay.

A.   She hadn't never said nothing about being in trouble.

Q. 153   So you're saying to the court and this jury that the only reason you made this statement to the police was because the police told you that if you confessed that they would let Robin and JoAnn out of jail?

A.   Yes.   Green said that he would do all he could to get Robin out of jail and when JoAnn went to court he would help her too.

Q. 154   Do you know if JoAnn–Robin ever got (out) of jail?

A.   Yes she got out when she went to court.

Q. 155   She went to court?

A.   Yeah.   In juvenile court."

Appellant is chagrined that he was not permitted to tell the jury that the charges against Robin were *dismissed*. The use of the word "dismissed" was not necessary to bring to the attention of the jury that Robin was turned loose. The evidence was more than sufficient to demonstrate her release. The trial court, if it acted erroneously in refusing to let appellant state that Robin was *dismissed*, and we do not mean to so state, at the most did not act to appellant's substantial prejudice.

*Was appellant denied a fair trial when evidence of the Paducah robbery was introduced against him?*

■ Appellant first made the Paducah robbery known in his confession subsequent to his arrest for the Henderson robbery. The testimony that the jurors were entitled to believe clearly delineated appellant's desire and plan to enter upon a series of robberies. Shortly after his release from prison at Eddyville, he stole an artificial moustache from the K–Mart store to help disguise his identity while making the robberies. He and Lainhart, prison acquaintances, discussed in detail the places that were to be robbed and they carried out their plans. In *Commonwealth v. Hillebrand*, Ky., 536 S.W.2d 451 (1976), we said:

"As we understand the law, evidence of prior *conduct* of a criminal nature is admissible, in certain circumstances, to show motive, guilty knowledge, a common plan or scheme, etc. But evidence simply that a person has committed another similar crime (related in those terms without reference to the *actions* of the defendant) is not admissible, any

**360**

more than evidence that he has been *convicted* of another crime (except where allowed for impeachment purposes). Evidence of prior conduct of a criminal nature is not admissible because it shows that another crime was committed, but despite the fact that it may show that another crime was committed. See *Henderson v. Commonwealth*, Ky., 507 S.W.2d 454."

We have no hesitation in coming to the conclusion that the trial court did not err in allowing testimony relating to the Paducah robbery.

*Did the trial court deprive appellant of due process when it omitted the intent requirement in the conspiracy instruction?*

■ The trial court instructed the jury that appellant could be found guilty of first–degree robbery both on the conspiracy level of complicity and on the aiding and abetting level of complicity. The appellant offered an instruction only on the aiding and abetting theory and did not offer an instruction on the conspiracy phase. The instructions offered by appellant were improper. He did not object to any of the other phases of the instructions; consequently, he did not preserve the alleged error for review. RCr 9.54(2); *Long v. Commonwealth*, Ky., 559 S.W.2d 482 (1977).

The judgment of the Henderson Circuit Court is affirmed.

All concur, except STEPHENS, J., who did not sit.