Phillip A. CLARK Appellant,

v.

COMMONWEALTH of Kentucky, Appellee,

and

Clifford G. NUTTER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 91–CA–001889–MR,
92–CA–000449–MR.

Court of Appeals of Kentucky.

Sept. 3, 1993.

Discretionary Review Denied
by Supreme Court Feb. 16, 1994.

Mark A. Posnansky, Appellate Public Advocate, Louisville, for appellant/Phillip A. Clark.

Barbara F. Anderson, Adele Burt Brown, Appellate Public Advocate, Lexington, for appellant/Clifford G. Nutter.

Chris Gorman, Atty. Gen., Todd D. Ferguson, Asst. Atty. Gen., Frankfort, Michael L. Harned, Asst. Atty. Gen., Frankfort, for appellee.

Before EMBERTON, SCHRODER and STUMBO, JJ.

STUMBO, Judge:

These appeals arise from judgments of conviction of Appellant, Phillip A. Clark (hereinafter "Clark") in 91–CA–001889–MR, and Appellant, Clifford A. Nutter (hereinafter "Nutter"), in 92–CA–000449–MR. The principal issue concerns the decision of the Mason Circuit Court not to suppress certain evidence. We have reviewed the record and the law, and we must reverse.

As a preliminary note, the question of whether either Clark or Nutter have "standing" to challenge the search has been raised. However, the trial court made no determination of the issue; therefore, we will not consider it. If the Commonwealth wanted to make standing an issue, it should have secured a ruling from the trial court. *See e.g.,*

*United States v. Cotton,* 751 F.2d 1146, 1148 (10th Cir.1985); *see also Helm v. Commonwealth,* Ky., 813 S.W.2d 816, 818 n. 1 (1991), which also declined to reach a standing issue where the record was not complete as to that issue.

■ Our starting point must be the trial court's findings of fact and conclusions of law regarding Clark's and Nutter's motions to suppress the items obtained. In reviewing this issue, we must analyze the findings made by the trial court regarding the motions to suppress. The factual findings of the trial court shall be conclusive if supported by substantial evidence. RCr 9.78. Clark and Nutter have the burden to show that the trial court's ruling was clearly erroneous. *Harper v. Commonwealth,* Ky., 694 S.W.2d 665, 668 (1985). The trial court found as follows:

### FINDINGS OF FACT

1. On the 8th day of January, 1991, Trooper Keith Taylor of the Kentucky State Police observed a 1988 Ford automobile traveling along the highway at a speed clocked by him as 76 miles per hour in a 55 mile per hour zone.

2. Trooper Taylor stopped the vehicle which was being operated by defendant Nutter with defendant Clark a passenger.

3. The driver did not have a valid driver's license, but did have a learner's permit which was valid only when a licensed driver was a passenger in the car. The passenger had no driver's license, his license having been suspended.

4. Trooper Taylor arrested Nutter and made arrangements for defendant Clark to be returned to Maysville, Kentucky.

5. During the arrest of Nutter, the trooper saw several unopened packages in plain view in the rear seat which were addressed to people other than either defendant.

6. According to defendant Nutter, the vehicle belonged to his wife, Patricia Nutter.

7. The automobile was stopped because of a substantial violation of the traffic laws, and not as a pretext in order to search the vehicle.

8. Both defendants were nonresidents of the County, and the arrest of the defendant was proper. It would not have been proper for the trooper to allow the defendant Nutter to drive the car away without a license.

9. In view of the fact that neither of the occupants of the car could legally drive it away, proper police procedure would have required that the car be inventoried.

### CONCLUSIONS OF LAW

1. A warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband is not unreasonable. *Carroll v. United States,* 267 US 132, 69 LEd. 543, 45 S.Ct. 280.

2. Police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a search that is as thorough as a magistrate could authorize in a warrant. *United States v. [Rose]* [sic], 456 US 798, 72 LEd.[2d] 572, 102 S.Ct. 2157 [ (1982) ].

3. The reasonable expectation of privacy is a particular relevant factor in determining the validity of any warrantless search. In regard to automobiles, the expectation of privacy is limited because of the nature of the unit. *Estep v. Commonwealth,* Ky. 663 SW2d 213.

4. A routine inventory search does not violate the Fourth Amendment prohibition against unreasonable search and seizures. *South Dakota v. Opperman,* 428 US 364, 49 LEd.2d 1000, 96 S.Ct. 3092.

Then, the trial court entered its order denying the motions to suppress, since it determined that the search and seizure was proper. The trial court apparently concluded that the search could be justified under the "automobile" or inventory search exceptions to the warrant requirement of § 10, and the diminished expectation of privacy in an automobile. None of the trial court's conclusions explain in any way how they are supported by the factual findings, nor is there even a conclusion that probable cause existed.

Since the main issue presented concerns the validity of the search and seizure, we must present a detailed summary of the facts. The testimony presented at the preliminary hearing and the suppression hearing establishes that the genesis of these appeals was a traffic stop near the Mason–Fleming County line for speeding (76 m.p.h. in a 55 m.p.h. zone) of the vehicle driven by Nutter, in which Clark was a passenger. We note that Nutter and Clark were travelling toward Fleming County. The automobile, a four-door Ford Tempo, was registered in Fayette County to Patricia Nutter. The Kentucky State Police trooper who made the stop requested that Nutter provide his operator's license. However, Nutter only had a valid learner's permit, and Clark had no identification at all. Therefore, the trooper obtained Clark's full name, his social security number, and his date of birth in order to check on Clark's license. The trooper was informed by his dispatcher that Clark did not have a valid license, since his Ohio license had been transferred to Kentucky, but was suspended. As a result, the trooper had Nutter exit the Tempo, and when Nutter was at the left rear of the car placed him under arrest. He then searched Nutter's person, handcuffed him, and placed him in the police cruiser. Next, the trooper asked Clark where he was headed. After Clark indicated that he desired to return to Maysville, the trooper arranged for a Mason County deputy sheriff to transport him. At that time, the trooper did not believe he had any basis to hold Clark. Some time passed, perhaps as much as forty minutes, before the deputy arrived. Prior to allowing Clark to leave with the deputy, the trooper executed a "protective" search of Clark.

After Clark departed, the trooper searched the Tempo. A review of the record does not clearly establish why the trooper thought he was authorized to search the vehicle, which causes us to question the trial court's seventh and eighth findings. While it is correct that the initial traffic stop was not a pretext to search, we have serious questions about whether the trooper's decision to arrest Nutter for a traffic violation was a pretext to attempt to justify a search of the car. We have a similar problem with the trial court's findings about the trooper not letting Nutter drive the vehicle away. It is again correct, but incomplete. The record does not foreclose the conclusion that Nutter could have made alternate legal arrangements to move the automobile, which might particularly include contacting his wife, Patricia. Thus, findings seven and eight may serve more to conceal than reveal the true situation.

In fact, the trooper offered several comments as to why he decided to search. At one point, the trooper indicated that he thought he could search the car incident to the arrest. However, it also appears that the search may have been made based upon the information then available to him (*i.e.*, probable cause). The evidence available to the trooper included the nervousness of Clark and Nutter, although the trooper conceded that many people are nervous whenever they are stopped by the police. Additionally, visible in the back seat, on the left side, was a big, round cardboard box labeled "Sears & Roebuck Co., Bluegrass Shopping Center, Maysville, Kentucky," with a person's name on it which was neither Clark's nor Nutter's. We note that there were other items in the back seat, including a VCR under a Sears diehard battery in an open box on the floor, on the right, and a large comforter set on either the floor or the middle of the back seat, but the trooper never stated that the items garnered his attention before he started to search. As a result, the trial court's fifth finding about several packages being in plain view is not supported by substantial evidence. Finally, there was the absence of any receipts on Clark or Nutter for any items from Sears. The trooper also indicated at one time that he could search the vehicle, because the big, round cardboard box with a name other than Clark's or Nutter's was in plain view.[1] Finally, we note that the trooper never articulated that the purpose of the search and seizure was for an inventory of the vehicle, although at one point the trooper made a comment about "safekeeping" the items. Nor is there any

---

1. Interestingly enough, although ultimately irrelevant to our analysis, the manager of Sears testified at trial that no names could have been visible from the exterior of the stolen items.

indication in the record that the Tempo was in a position to pose any risk to other vehicles, nor parked in violation of any law. In fact, there is some indication that Patricia Nutter would have come from Lexington and picked up the Tempo. Moreover, there is not one single reference in the record to any police procedures regarding impoundment and inventory. As a result, the trial court's finding to that effect is not supported by substantial evidence.

In any event, the trooper initially searched in the front seat and the glove box, where he found a substance rolled up in a brown, paper-bag-like material, which he suspected might be "hash." Subsequent testing demonstrated that it was not hash, but the substance was composed of common ingredients such as syrup, sage, oregano or basil, and known as "rip-off hash."

Once he found the "hash," he proceeded to examine the items in the back seat. The trooper opined that he was clearly free to search the back seat once he had found the hash. The items found included a mobile home water heater, which had been in the big, round cardboard box previously noted, and the other items previously noted (comforter set, Diehard battery, and VCR). The water heater, comforter set, and battery were all from Sears, and all had names other than Clark's or Nutter's on their invoices or packing slips. The VCR had a slip of paper with a name other than Clark's or Nutter's, and a phone number with a Paris, Kentucky, exchange. The trooper proceeded to place all the items found in his vehicle.

The evidence as to events after the search commenced is irrelevant to our inquiry into the search and seizure. With the facts established in the record as sketched above, we will now consider the trial court's conclusion that the search was justified under an exception to the warrant requirement.

We do not question a majority of the trial court's findings, but there are several critical findings which are either unsupported by the record at all or incomplete. We have pointed out these problems in our sketch of the facts, and will further highlight them in the context of our discussion of the issues. To summarize, the trial court's findings which are sup-

ported by the record establish a routine traffic stop, a routine traffic violation, that neither occupant could drive the vehicle from the scene, the car was owned by one of the occupant's spouse, there was a package with a name different from the occupants visible in the rear seat of the Tempo, and there was some justification, albeit subject to serious question about whether it was a pretext, to arrest Nutter.

The primary issue on appeal is whether the search and seizure of the items from the Tempo violated the rights of Clark or Nutter under § 10 of the Kentucky Constitution, which provides as follows:

> The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

We are, of course, aware of the equal applicability of the "floor" of the rights of Clark and Nutter provided by the Fourth Amendment to the U.S. Constitution. *See Commonwealth v. Wasson*, Ky., 842 S.W.2d 487 (1992); *Crayton v. Commonwealth*, Ky., 846 S.W.2d 684 (1992); and *Holbrook v. Knopf*, Ky. 847 S.W.2d 52 (1993).

■ Before going further, we must note that "[a]ll searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. The burden is on the prosecution to show the search comes within an exception." *Gallman v. Commonwealth*, Ky., 578 S.W.2d 47, 48 (1979); *Accord, Katz v. United States*, 389 U.S. 347, 356–58, 88 S.Ct. 507, 514–15, 19 L.Ed.2d 576, 585 (1967). Moreover, the search must satisfy all of the requirements of the exception; it cannot be justified by creating an amalgam, which combines elements of different exceptions to support a search not otherwise valid under any of the separate exceptions. *Cf. Fisher v. Duckworth*, Ky., 738 S.W.2d 810, 813 (1987).

■ The first exception we shall analyze is whether the search may be justified under

the "plain view" exception. As its name indicates, the "plain view" exception validates searches and seizures when evidence is visible to the officer, provided the officer has not violated the constitution in getting to where he can view the evidence; the officer has lawful access to the object itself; and the object's incriminating character is immediately apparent. *Hazel v. Commonwealth,* Ky., 833 S.W.2d 831, 833 (1992). Without even considering the first two elements, we must conclude that there is nothing incriminating *per se* about the presence of the big, round cardboard box labeled, "Sears & Roebuck Co., Bluegrass Shopping Center, Maysville, Ky.," with the name thereon of a person other than Clark or Nutter, in the back of the Tempo. We need not engage in speculation to note that the vast majority of similar situations involve transporting a package for a friend, an in-law, or the like. Therefore, the search cannot be validated as one based upon "plain view."

We might reach a different result if the record supported the trial court's finding that the trooper saw several packages, all with different names. If there were multiple names, one could argue that the presence of many different names eliminated the possibility of an innocent transaction. But even in such a hypothetical situation, we think any attempt to apply the "plain view" doctrine would be strained.

■ Finally, we note that there was no plain view of the "hash," since it was found in the glove box. *See Patrick v. Commonwealth,* Ky., 535 S.W.2d 88, 89–90 (1976). As a result, it cannot be used to justify the search and seizure under the "plain view" exception.

■ The second exception we shall consider is the "inventory" search exception. An inventory search must be one conducted for purposes other than investigation, and based upon a standardized policy, which provides standardized criteria to restrict or eliminate an officer's discretion as to whether and what to search. *See Florida v. Wells,* 495 U.S. 1, 3–4, 110 S.Ct. 1632, 1634–35, 109 L.Ed.2d 1, 6 (1990). If there is no policy of record, as in this case, then an "inventory" search is not sufficiently regulated to pass Fourth Amendment muster. *Id.* 495 U.S. at 4–6, 110 S.Ct. at 1635–36, 109 L.Ed.2d at 7. Consequently, the inventory exception cannot justify the search at issue.[2]

■ The "automobile" exception to the warrant requirement is the third situation we will consider. The automobile exception allows officers to search a legitimately stopped automobile where probable cause exists that contraband or evidence of a crime is in the vehicle. *United States v. Ross,* 456 U.S. 798, 800–01, 102 S.Ct. 2157, 2159–61, 72 L.Ed.2d 572, 578 (1982) (citations omitted); *Estep,* 663 S.W.2d at 215. The search may be as thorough as a magistrate could authorize via a search warrant, including all compartments of the automobile and all containers in the automobile which might contain the object of the search. *Ross,* 456 U.S. at 823–24, 102 S.Ct. at 2172–73, 72 L.Ed.2d, at 593; *Estep,* 663 S.W.2d, at 215. This exception is based upon the exigencies created by an automobile's mobility, and upon the diminished expectation of privacy one has in an automobile, which arises from the pervasive regulatory schemes applicable to automobiles. *California v. Carney,* 471 U.S. 386, 390–93, 105 S.Ct. 2066, 2068–70, 85 L.Ed.2d 406, 413–14; *Estep,* 663 S.W.2d at 215.

■ The key to the automobile exception, as applied to this appeal, is whether there was probable cause. Probable cause must exist and be known to the investigating officer at the time he commences the search. *See Sampson v. Commonwealth,* Ky., 609 S.W.2d 355, 358 (1980). It is insufficient to look at the evidence in retrospect and find probable cause. *Id.* Probable cause exists when the totality of the circumstances then

---

**2.** We need not reach the question of whether *Wagner v. Commonwealth,* Ky., 581 S.W.2d 352 (1979), offers any greater protection, since the search does not pass muster under the Fourth Amendment. However, we do note *Holbrook v. Knopf,* Ky., 847 S.W.2d 52, 55 (1993), where the Kentucky Supreme Court, citing *Estep v. Com-* *monwealth,* Ky., 663 S.W.2d 213 (1983) and *Crayton, supra,* stated that § 10 should be interpreted consonant with the Fourth Amendment, and further stated that *Estep* overruled *Wagner* without qualification, which would appear to be *Wagner's* death knell.

known to the investigating officer creates a fair probability that contraband or evidence of crime is contained in the automobile. *Id.* at 358–59; *see also Illinois v. Gates,* 462 U.S. 213, 229–31, 103 S.Ct. 2317, 2327–29, 76 L.Ed.2d 527, 543 (1983); *Beemer v. Commonwealth,* Ky., 665 S.W.2d 912, 913–15 (1984).

 In deciding whether probable cause was present in this case, we must initially note that the trial court never specifically found that probable cause was established. Nor do we think its citations of authority in its conclusions of law will stand in the place of such a finding. As a result, we must conclude that no probable cause was established, which precludes reliance on the automobile exception to the warrant requirement of § 10.

 Even if we were to conclude that the trial court *sub silentio* found probable cause, the result would be the same, since the evidence available to the investigating officer prior to the search does not support such a finding. Notably, the only evidence available was the nervousness of Clark and Nutter; the presence of the big, round, cardboard box in the back seat, upon which there was a Sears label and a third person's name; the presence of other items in the back seat, which did not draw the trooper's specific attention; and the absence of any receipts on Clark and Nutter. While the combination of these factors might well create a suspicion of criminal activity, which would merit further investigation, they do not rise to the level of probable cause given the innocuous conclusions, which are at least as equally logical as any other, to be drawn from them. As we previously noted, the record does not support a finding that the trooper knew there was multiple packages with multiple unrelated names prior to the search, which might well

yield a different result. Additionally, the record clearly establishes that the trooper took no notice of the Tempo's Fayette County license plates creating any suspicion regarding Fayette County residents making a pick-up of Sears merchandise in Maysville until well after the fact. Moreover, given our mobile society, it does not necessarily follow that out-of-county license plates will create any suspicion of criminal activity, although we need not reach the issue. In any event, we conclude that the totality of the circumstances known to the trooper at the time he commenced the search did not create a fair probability that evidence of a crime was contained in the Tempo. Thus, the search cannot be justified under the "automobile" exception.

 The final exception advanced to support the search is the "search incident to arrest" exception. It provides, in relation to automobiles, that where there is probable cause to support a custodial arrest, that same probable cause justifies a search of the entire automobile passenger compartment. *Commonwealth v. Ramsey,* Ky., 744 S.W.2d 418, 419 (1987); *New York v. Belton,* 453 U.S. 454, 460–63, 101 S.Ct. 2860, 2864–66, 69 L.Ed.2d 768, 775–76 (1981). While a superficial analysis (*i.e.,* Nutter was arrested near his car) might suggest the "search incident" or *"Belton"* exception is applicable, we do not so find. First, both *Belton* and *Ramsey* involved arrests for criminal offenses (possession of marijuana and DUI, respectively) as opposed to this appeal, where the arrest was only for traffic violations (speeding and absence of a licensed driver), which normally do not involve custodial arrest.[3] In fact, we note nothing in the record to establish that the decision to arrest Nutter was made on any basis other than the trooper's unfettered (*i.e.,* arbitrary and capricious) discretion. Thus, based upon the nature of the arrest

3. We are aware of the Commonwealth's assertion that the Supreme Court in *Ramsey* indicated the arrest was for both DUI and not having a valid license. Therefore, the Commonwealth argues that there is no real distinction among types of arrest. In other words, any arrest justifies a full search. However, our examination of *Ramsey* leads us to the opposite conclusion. Notably, the Kentucky Supreme Court framed the issue as follows:

The specific question is whether the arresting officer was entitled to search the passenger compartment of a vehicle following an arrest for DUI.

*Ramsey,* 744 S.W.2d at 418. Thus, we conclude that *Ramsey* did not actually reach the issue presented here; therefore, our analysis is unaffected.

involved in this appeal, we conclude that *Belton* and *Ramsey* do not authorize a search of the Tempo. *See United States v. Gonzalez,* 763 F.2d 1127, 1130 n. 1 (10th Cir.1985), which analyzed a traffic stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (investigatory stops justify only a limited detention not including a full search of an automobile), rather than *Belton.*[4] Our conclusion is buttressed by *McHone v. Commonwealth,* Ky.App., 576 S.W.2d 242, 243 (1978); and *Commonwealth v. Hagan,* Ky., 464 S.W.2d 261, 264 (1971), which both hold that an arrest for a minor traffic violation does not justify a complete search of the vehicle. Although both *McHone* and *Hagan* predate *Belton* and *Ramsey,* they were not overruled in *Ramsey.* As a result, we must conclude that they are still good law. SCR 1.030(8)(a). Moreover, we do not think precluding full searches after traffic violation-related arrests does violence to the preference in *Belton,* and presumably *Ramsey,* for bright lines to guide police officers, since *McHone* and *Hagan* also draw bright lines.

Second, we do not think that the search of the Tempo was truly a search *incident* to arrest. In this case, Nutter was arrested outside the Tempo, at the left rear of the vehicle, and placed immediately into the trooper's cruiser, and there is no suggestion that Nutter could have gotten back to the Tempo. As such, the "search incident" was not properly limited to the area within Nutter's immediate control, from which a weapon could be drawn, or evidence destroyed, which is the justification for the search allowed in *Belton. United States v. Vasey,* 834 F.2d 782, 787 (9th Cir.1987); *See also Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which provided the theoretical grounding for *Belton. But cf. United States v. Pino,* 855 F.2d 357, 363–64 (6th Cir.1988), which upheld a search in similar

circumstances as a search incident. Additionally, there is some question in this case whether the search was contemporaneous with the arrest, since it took place some time (apparently, thirty to forty minutes or more after Nutter's arrest). *See Vasey,* 834 F.2d, at 787–88. *But cf. United States v. Bates,* 398 F.Supp. 731, 733 (S.D.Tex.1975), which held that a one-hour and fifteen-minute delay between arrest and search was not objectionable when there was justifiable reason for the delay. In any event, we conclude that the search in this case was not a search incident to arrest, which precludes reliance on that exception to the warrant requirement.

In sum, it has not been demonstrated that the search of the Tempo fits within any of the exceptions to the warrant requirement of § 10 of the Kentucky Constitution. As such, it was improper. *See Gallman, supra.* Therefore, the trial court erred as a matter of law in not suppressing the evidence found in the Tempo. Consequently, we must reverse the convictions of Clark and Nutter.

In view of our disposition of the search and seizure issue, we need not reach Clark's argument that he was entitled to a directed verdict.

For the reasons set forth above, we reverse the judgments of conviction of Clark and Nutter, and remand for further proceedings, if any, consistent with this opinion.

SCHRODER, J., concurs.

EMBERTON, J., concurs by separate opinion.

EMBERTON, Judge, concurring.

Albeit reluctantly, I concur with the result of the majority. I have no doubt that the

---

4. We are also aware of *Docksteader v. Commonwealth,* Ky.App., 802 S.W.2d 149 (1991), which the Commonwealth relied upon at oral argument. Specifically, the Commonwealth asserts it is another basis for not distinguishing between types of arrest. However, *Docksteader* is both factually and legally distinguishable because it involved an analysis of a *Terry*-stop, and only a protective search for weapons, and the differing violations were felonies and misdemeanors rather than mere violations. Nor do we think *Docksteader* is applicable to these appeals, since there was no need to conduct a protective search of the Tempo for weapons when it was actually searched because both Clark and Nutter were already gone from the scene or secured in the trooper's vehicle, respectively. Moreover, given the length of the detention, and Nutter's arrest, the analysis in *Terry* and *Docksteader* of limited investigatory stops is not applicable.

Kentucky State Police has established policy relating to inventory search; however, under *Florida v. Wells,* 495 U.S. 1, 3–4, 110 S.Ct. 1632, 1634–35, 109 L.Ed.2d 1, 6 (1990), the failure of the Commonwealth to put such fact into evidence is fatal to the inventory search.