RENDERED: FEBRUARY 19, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0414-MR

EDGAR HERNANDEZ                                              APPELLANT

                 ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.                   HONORABLE JENNIFER WILCOX, JUDGE
                         NO. 22-CR-002245

COMMONWEALTH OF KENTUCKY                        APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

Edgar Hernandez entered a conditional guilty plea pursuant to RCr[1] 8.09 to two counts of murder and one count of tampering with physical evidence. Within his guilty plea, he reserved the right to appeal from the denial of his pretrial suppression motion. The trial court sentenced him to the negotiated term of twenty-five years' imprisonment and this appeal followed. We affirm.

On May 14, 2022, Khalil Laghmani and Mahamedamin Abdi were shot and killed at the intersection of Hikes Lane and Breckenridge Lane in Louisville, Kentucky. Eyewitnesses told investigators that a green Chevrolet Tahoe pulled up next to the victims' vehicle before gunfire erupted. The Tahoe then drove through the parking lot of a neighboring Kroger where an employee noted it had a yellow license plate. Surveillance video from surrounding

---

[1] Kentucky Rules of Criminal Procedure.

businesses and residences obtained by police showed the Tahoe and revealed it had a unique antenna and wheels. Also, the rear window wiper arm had what appeared to be a distinctive spot of white paint.

During the ensuing investigation, Detective Stephen Snider spoke with Hernandez's ex-girlfriend after receiving a tip from the sister of one of the victims that she might have information related to the murders. According to the ex-girlfriend, Hernandez told her that he had shot Khalil in the head. However, in spite of his confession, she indicated her belief Hernandez was not the shooter and said he had also told her he was only joking about killing Khalil. At the time he made the statements, much of the information surrounding the identities of the victims and the nature of their injuries had not been released by police to the public or media outlets.

Detective Snider obtained cellphone data which confirmed Hernandez had called his ex-girlfriend shortly after the murders. Cell site location data also placed him in the area of the shooting around when it occurred and showed he drove back to his apartment afterwards. The direction of travel from the shooting location to his home matched the statement given by the Kroger employee who had seen the Tahoe leaving the scene immediately following the murders.

Detective Snider then conducted video surveillance of Hernandez's home. There, police observed a green Tahoe with a yellow "Just for Kids" license plate, a white spot on the rear wiper arm, and unique wheels and antenna which matched descriptions given by eyewitnesses. Hernandez was seen driving the vehicle numerous times and was observed in the video surveillance on more than one occasion exiting the vehicle while in possession of a handgun.

2

Based on the information gathered during the investigation, Detective Snider effected a warrantless arrest of Hernandez outside of his home. Incident to his arrest, Hernandez was searched, and a gun was found in his hooded sweatshirt.[2]  Once in custody, Hernandez was transported to the police station to be interviewed and processed.  At the beginning of the recorded interview, after obtaining basic identification information, Detective Snider read Hernandez the required *Miranda*[3] warnings and provided him a printed copy. He then read and provided Hernandez a waiver of rights, explained that he was not required to talk and could stop the questioning or request an attorney at any time.  Hernandez asked "So, like, if I [inaudible] speak to you, that means . . ."[4] at which point Detective Snider stated signing the waiver indicated a willingness to talk but reiterated that Hernandez could stop talking whenever he wished and could also ask for an attorney if he wished.  Hernandez subsequently signed the rights waiver form and ultimately confessed to shooting both victims.  He was indicted for two counts of murder and one count of tampering with physical evidence.[5]

Hernandez moved to suppress his statements to police and all evidence obtained subsequent to his warrantless arrest.  He asserted his arrest was

---

[2] It was subsequently determined that the gun seized from Hernandez was not the murder weapon.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] The parties dispute whether Hernandez said, "if I *want to* speak to you" or "if I *don't* speak to you."  The interview was played for the trial court and the audio was captured on the video record.  However, Hernandez's actual words are not discernable by this Court.  Although a copy of the recorded interview and Detective Snider's body-worn camera footage from the interview were tendered as exhibits, neither is part of the appellate record.

[5] The tampering charge arose from Hernandez's alleged disposal of the murder weapon.

invalid as it was unsupported by probable cause and made only for investigatory purposes. He contended his confession was involuntary due to the illegal arrest and his lack of knowledge of the seriousness of the offenses for which he stood accused because he was not immediately informed of the reason he was being arrested. He asserted both his confession and the evidence seized[6] were tainted and should be suppressed.

Following an evidentiary hearing and the filing of post-hearing memoranda, the trial court denied the suppression motion, concluding an arrest warrant was not required and detectives possessed sufficient proof to support a probable cause arrest. Because the arrest was proper and lawful, the trial court found the ensuing search of Hernandez's person was likewise not infirm. It further concluded Hernandez had been properly advised of his *Miranda* rights, he had indicated his understanding of those rights by his actions and the signing of the waiver form, and he never asked for an attorney. Finally, the trial court discerned no evidence supporting Hernandez's claim his confession to police was coerced.

Hernandez subsequently entered a conditional guilty plea, reserving the right to appeal the adverse ruling on his suppression motion. In exchange for his plea, the Commonwealth recommended concurrent sentences of twenty years on each murder charge and a consecutive five-year sentence for the tampering with physical evidence charge, for a total sentence of twenty-five

---

[6] Although Hernandez initially challenged the search of his home by police, he raises no argument on appeal relative to that issue. This failure is deemed to be an abandonment of the issue, and we decline to address the matter. *CSX Transp., Inc. v. Moody*, 313 S.W.3d 72, 88 (Ky. 2010).

years.  The trial court imposed the recommended sentence, and this appeal followed.

Before this Court, Hernandez argues suppression was required for three reasons.  First, he asserts police lacked probable cause to effect his warrantless arrest in circumvention of his constitutional protections.  Building upon those assertions, he also contends the search incident to his arrest was infirm as likewise lacking probable cause.  Finally, Hernandez alleges he did not validly waive his *Miranda* rights and that his confession was involuntary.  We shall address each allegation of error in turn.

When reviewing rulings on motions to suppress, this Court utilizes a two-step process.

> First, we review the trial court's findings of fact under the clearly erroneous standard.  Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence.  Second, we review de novo the trial court's application of the law to the facts.

*Rhoton v. Commonwealth*, 610 S.W.3d 273, 275-76 (Ky. 2020).  Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men."  *Commonwealth v. Jennings*, 490 S.W.3d 339, 346 (Ky. 2016) (quoting *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998)).  In undertaking such a review, we are mindful "to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas v. United States*, 517 U.S. 690, 699 (1996).  A trial court's decision on a suppression motion is "based squarely [on] the evidence presented at the suppression hearing."  *Hampton v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007).  Such testimony does not require corroboration.  As a reviewing Court, we will not

substitute our view of the evidence for that of the trial court. *Payne v. Commonwealth*, 681 S.W.3d 1, 4 (Ky. 2023).

Hernandez first argues his warrantless arrest was purely investigatory, unsupported by probable cause, and was therefore unlawful. He claims that, at the time of his arrest, officers "had very little evidence, more of a hunch that [he] was the shooter," so they intentionally and deliberately chose to forego the arrest warrant procedure, opting instead to rely on the statutory authority for warrantless arrests of suspected felons pursuant to KRS[7] 431.005(1)(c). Hernandez claims no exigent circumstances existed and police had no valid reason for bypassing the warrant procedure. In his estimation, Detective Snider's actions strongly indicate he was aware he lacked articulable probable cause at the time he effectuated the arrest. Thus, Hernandez argues his arrest was unconstitutional and the trial court erred in failing to sustain his suppression motion on that ground. We disagree.

Contrary to Hernandez's implication, no absolute requirement exists that a police officer, in the absence of exigent circumstances, must always seek to procure an arrest warrant prior to taking a suspected felon into custody.[8] Nearly fifty years ago, the Supreme Court of the United States held "[t]here is nothing in the Court's prior cases indicating that under the Fourth Amendment

---

[7] Kentucky Revised Statutes.

[8] For the first time on appeal, Hernandez asks this Court to revisit our precedent relative to the protections contained in Section Ten of the Kentucky Constitution "to determine whether an absence of a warrant requirement for arrests should still be the law of the land in Kentucky[.]" We decline his invitation as "it is the longstanding practice of this Court to refrain from addressing constitutional questions unless absolutely necessary to a decision on the merits of the case." *Dunn v. Solomon Found.*, 723 S.W.3d 711, 734 (Ky. 2025) (citations omitted).

6

a warrant is required to make a valid arrest for a felony. Indeed, the relevant prior decisions are uniformly to the contrary." *United States v. Watson*, 423 U.S. 411, 416-17 (1976).[9] "The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence." *Carroll v. United States*, 267 U.S. 132, 156-57 (1925) (citations omitted). Kentucky has codified this fundamental rule in KRS 431.005(1)(c) which permits a police officer to make a warrantless arrest "when he or she has probable cause to believe that the person being arrested has committed a felony[.]"

Here, there is no doubt a felony had been committed, so the issue before this Court centers on whether, after reviewing the pertinent facts, Detective Snider had reasonable grounds to believe Hernandez had committed the felony.

> Probable cause to arrest is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed. . . . In determining whether an arrest is reasonable under the Fourth Amendment, courts must never lose sight of the fundamental principle that probable cause is a common-sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.
>
> . . .
>
> Probable cause to arrest is a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules; it is incapable of precise definition or quantification into percentages.

---

[9] In Kentucky, the protections from unreasonable searches and seizures under both the state and federal constitutions are co-extensive. We have consistently held that "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment." *Cobb v. Commonwealth*, 509 S.W.3d 705, 712 (Ky. 2017) (quoting *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996)). Thus, we are guided by decisions of the United States Supreme Court interpreting the Fourth Amendment. *Reed v. Commonwealth*, 647 S.W.3d 237, 243 (Ky. 2022).

> The subjective intentions of an arresting officer play no role in an ordinary "probable cause" analysis under the Fourth Amendment. Rather, an arrest will be upheld if objective circumstances justify it.

5 AM. JUR. 2d *Arrest* § 9 (citations omitted). Additionally,

> [p]robable cause must exist and must be known by the arresting officer at the time of the arrest. It is not sufficient that we look at the evidence in retrospect to find probable cause. . . . The prior knowledge required by an officer is not such as guarantees a conviction; it is such that makes it probable, by the use of any one or more of our five senses, that in the opinion of the arresting officer the accused had committed or was in the act of committing a felony.

*Sampson v. Commonwealth*, 609 S.W.2d 355, 358-59 (Ky. 1980). "The necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." *Watson*, 423 U.S. at 417.

Hernandez offers little more than speculation and arguments based on inferences gleaned from his opinions that officers lacked probable cause to arrest him or that they intentionally attempted to evade the warrant requirement by lying in wait outside his apartment. He further fails to indicate how or why the trial court's decision was clearly erroneous. Our review of the record reveals his allegation of error is without merit.

During the investigation of the double homicide, Detective Snider obtained eyewitness reports and surveillance video revealing details of the shooting as well as the suspected shooter's vehicle and direction of travel. Subsequent surveillance placed an armed Hernandez behind the wheel of a vehicle matching that seen on the surveillance video which was confirmed to be owned by his family. Cellphone data revealed Hernandez was in the vicinity of

8

the shooting when it occurred and travelled toward his home thereafter. Detective Snider was also made privy to statements Hernandez made to his ex-girlfriend implicating himself in the shootings which included details which had not yet been released to the public by police. Again, cellphone data confirmed Hernandez phoned his ex-girlfriend shortly after the shooting. Given these facts, we are convinced Detective Snider possessed sufficient probable cause to effectuate an arrest and conclude the trial court did not abuse its discretion in so finding.

Having held Hernandez was not unlawfully arrested, we can summarily dispose of his second argument relative to the alleged illegality of the search incident to his arrest. "Among the recognized exceptions to the warrant requirement is a search incident to arrest" whereby "an officer is permitted to search the person arrested and the area within the arrestee's immediate control." *McCloud v. Commonwealth*, 286 S.W.3d 780, 785 (Ky. 2009) (footnotes omitted). Because Hernandez was lawfully arrested, the search of his person was constitutionally permissible as it "flowed naturally and permissibly" from that arrest. *Id.* at 786. Suppression of evidence seized during the search was unwarranted.

Finally, Hernandez contends his confession should have been suppressed as the fruit of an illegal arrest. Alternatively, he asserts suppression was necessary because he did not validly and voluntarily waive his *Miranda* rights. Insofar as his challenges rest on allegations that his arrest was unconstitutional and solely for investigatory purposes, they are without merit for the reasons previously stated herein and warrant no further discussion. Plainly, "[a] confession cannot be 'fruit of the poisonous tree' if the

9

tree itself is not poisonous." *Colorado v. Spring*, 479 U.S. 564, 571-72 (1987).

We focus instead on Hernandez's assertions relative to the voluntariness of his confession.

"The Fifth Amendment of the United States Constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Id.* at 572. Before a custodial interrogation commences, a defendant must be informed "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. If the defendant desires not to talk with police, begins speaking and subsequently decides to stop the questioning, or requests an attorney's presence, the interrogation must cease. *Id.* at 445. Any waiver of the right to remain silent must be made "voluntarily, knowingly, and intelligently." *Id.* at 444. The Commonwealth bears the burden of "affirmatively establish[ing] the voluntariness of a confession by a preponderance of the evidence." *Tabor v. Commonwealth*, 613 S.W.2d 133, 135 (Ky. 1981).

Hernandez's entire interview was recorded and presented as evidence to the trial court. The recording reveals Hernandez was read his *Miranda* warnings, Detective Snider provided him a written copy of the rights, and Hernandez signed a rights waiver form. At the suppression hearing, Hernandez testified that he understood his rights under *Miranda* and admitted he never requested an attorney. He does not challenge Detective Snider's testimony that he admitted to shooting both victims. Nor does he contend he was coerced or compelled to waive his rights or to offer a confession. Nevertheless, Hernandez asserts his confession could not be voluntary because he could not appreciate

the context in which he was waiving his rights as Detective Snider did not promptly inform him of the reason for the arrest. He believes these facts render the Commonwealth incapable of carrying its burden of showing his confession was voluntary. Again, we disagree.

Hernandez's assertion that Detective Snider did not provide him with all information he now deems pertinent prior to seeking a waiver is unpersuasive. His position

> does not relate to any of the traditional indicia of coercion: "the duration and conditions of detention . . ., the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control." *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) (opinion of Frankfurter, J.). Absent evidence that [Hernandez's] "will [was] overborne and his capacity for self-determination critically impaired" because of coercive police conduct, *ibid.*; see *Colorado v. Connelly,* 479 U.S. 157, 163-164, 107 S.Ct. 515, ——, 93 L.Ed.2d 473 (1986), his waiver of his Fifth Amendment privilege was voluntary under [the Supreme] Court's decision in *Miranda.*

*Spring,* 479 U.S. at 574.

We are likewise unconvinced the waiver of his Fifth Amendment privilege was not knowingly and intelligently made. Hernandez admittedly knew and understood he had the right to remain silent, that anything he said would be used as evidence against him, and that he had the right to request counsel at any time. "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Id.* (citation omitted). His alleged tender years and lack of experience with law enforcement simply does not change the Constitutional calculus. *See Hernandez v. Commonwealth,* 671 S.W.3d 217, 226 (Ky. 2023).

11

Additionally, the United States Supreme Court "has never held that mere silence by law enforcement officials as to the subject matter of an interrogation is 'trickery' sufficient to invalidate a suspect's waiver of *Miranda* rights[.]" *Spring*, 479 U.S. at 576. We decline to accept Hernandez's invitation to do so today. Nor are we inclined to hold that a statutory violation of KRS 431.025 constitutes "overreaching" by police sufficient to invalidate an otherwise constitutionally sound arrest and subsequent confession by a defendant. Even if a statutory violation occurs, exclusion of evidence is generally not appropriate. *See Commonwealth v. Bedway*, 466 S.W.3d 468, 477 (Ky. 2015).

Based on the totality of the circumstances, we discern no abuse of discretion in the trial court's refusal to grant Hernandez's suppression motion. Hernandez admittedly knew his rights, waived them at the beginning of his interview, and did not subsequently seek to invoke them before confessing to the double homicide. The record reveals no indication of coercion or police misconduct which would taint his confession. Hernandez's speculative and self-serving accusations to the contrary do not withstand scrutiny. There was no error.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, and Thompson, JJ., concur. Keller, J., concurs in result only.

COUNSEL FOR APPELLANT:

Rob Eggert
Tricia F. Lister


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General